**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

HOMEAWAY.COM, INC.,

       Plaintiff,

   - against –

CITY OF NEW YORK,

       Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case No.  18-cv-7742

**COMPLAINT TO DECLARE INVALID AND ENJOIN ENFORCEMENT OF NEW YORK CITY ADMINISTRATIVE CODE SECTIONS 26-2101–26.2104**

For its complaint, Plaintiff HomeAway.com, Inc. ("HomeAway") states as follows:

## I.  INTRODUCTION

1.  This is an action to declare unlawful, and enjoin the enforcement of, a recently passed ordinance of the City of New York (the "City")—specifically, New York City Administrative Code Sections 26-2101–26-2104 (the "Ordinance")—that would require internet-based booking services such as HomeAway to turn over to the City large volumes of their customers' personal and confidential information, in violation of federal law protecting against the forced disclosure of customer data without legal process.  In so doing, the Ordinance purports to require internet services to obtain from their customers—essentially as a condition to doing business with the online service—forced "consent" to the disclosure of their private personal and financial information to the City.  And the Ordinance does not meaningfully limit the use or dissemination of such information by the City—for example, it does not include a prohibition on disclosure to other government agencies, non-governmental third parties, or members of the public.

2.     These and other features of the Ordinance fly directly in the face of the federal

Stored Communications Act, 18 U.S.C. § 2701 *et seq*. ("SCA"), which protects precisely the type

of private personal and financial data that is the subject of the Ordinance.  Not only does the

Ordinance force disclosure of private information and purport to force "consent" to that

disclosure, but, ironically, it does so at a time when legislative, judicial, and public support for

*protecting against* the release of private data shared with internet services and ensuring free and

informed consent for any such release has never been stronger.  And by demanding the personal

information and details of financial transactions for *all* of a service's customers, the Ordinance in

effect sets up a surveillance regime through which the government can monitor a person's

perfectly legal activities.  As set out in detail below, both the forced disclosure and the forced

consent provisions of the Ordinance are preempted by the SCA, and also violate multiple other

federal and state laws.  Because the Ordinance oversteps the bounds of what government may do

in support of its law enforcement efforts, HomeAway brings this action for injunctive and

declaratory relief pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1367, the Court's equitable powers,

and the Declaratory Judgment Act, 28 U.S.C. § 2201.

3.     The City already has in place laws regulating the provision of short-term rental

properties by residents in the City (commonly referred to as "hosts," whereas those seeking to

book short-term rental properties are known as "guests" or "travelers").  Those laws are not at

issue and are not being challenged here.  But by enacting the present Ordinance, the City is trying

to conscript online platforms into policing these laws, and specifically does so by requiring them

to extract and divulge private details of their customers under the guise of so-called forced

"consent" to such disclosure.  This effort to force platforms to divulge private customer

information—and to do so through a government imposed "consent" requirement—violates fundamental privacy protections guaranteed by federal and state law.

4.      HomeAway, and other companies like it, provide an online platform through which individuals who wish to offer accommodations, and travelers seeking to rent them, can find and enter into agreements with one another.

5.      The Ordinance impermissibly compels booking services and online platforms like HomeAway, on pain of significant and potentially crippling monetary penalties, to provide a report each month that discloses confidential personal and financial information relating to their customers, including, but not limited to, the names, physical addresses, phone numbers, and email addresses of those customers; the details of each and every transaction entered into on their websites by the customers; information about how the customers use and rent their properties; and, in some circumstances, the personal bank account information for the customers.

6.      To make matters worse, the Ordinance requires that this information be provided for all transactions and all customers regardless of whether the City believes or even suspects that a specific customer or specific transaction has violated its short-term rental laws.

7.      It is clear from the way the Ordinance is written that the City recognizes that laws that force disclosure of personal and confidential customer information violate federal and state law, including the SCA, the Fourth Amendment to the United States Constitution, and the comparable provision of the New York State Constitution.  In a heavy-handed, transparent tactic to try to evade these protections, the City has included a provision that, if upheld, would force online platforms to obtain from their customers, as a condition to using the online service, "consent" to the disclosure of their personal, confidential information to the City.

8.      The applicable statutory and constitutional privacy protections cannot be evaded so easily.  The government cannot mandate that citizens relinquish fundamental privacy rights that are protected under federal and state constitutional and statutory provisions, and certainly cannot do so as a price of doing business in a city or municipality or engaging in commerce on the internet.  For example, the City could not require its residents to consent to unlawful searches or seizures of their homes in order to purchase a property in New York.  Nor could it require car rental companies to obtain consent from their customers to submit to random searches while driving within city limits.  Yet that is exactly what the Ordinance purports to do.  It would require users of short-term rental platforms to consent to an unlawful turnover and search and seizure of their confidential and personal information as a non-negotiable cost of using an online platform.

9.      The scope of the theory advanced by the City is, to put it mildly, breathtaking.  On the City's view, it could require cellphone companies to obtain the consent of their users to provide a monthly list of all telephone calls and text messages its users received or sent and the contents of those communications.  By a similar sleight of hand, the City could require eBay or Amazon to provide the details of all transactions entered into on their websites, including what was bought, how frequently, and how much was paid.  And just as the Ordinance does here, these internet companies would be required to provide this highly personal and confidential information for all customers and all transactions based on speculation that some of those customers might be engaging in unlawful conduct, even though many individuals use these websites for lawful transactions that benefit the economy and society at large.  With a single stroke of its own pen, the City threatens to impair the internet economy and destroy the privacy protections on which consumers are entitled to rely in today's internet-driven economy.

4

10.      For the following reasons, enforcement of this Ordinance is unlawful and should be enjoined.

11.      *First*, the Ordinance directly conflicts with and is preempted by the Stored Communications Act, 18 U.S.C. § 2701 *et seq*., under which internet platforms such as HomeAway that store or retain customer data are prohibited from turning that information over to the government absent certain specific protections and legal process limitations that are not present here.  In direct violation of the SCA, the Ordinance purports to require online platforms like HomeAway to turn over to the City sensitive personal and financial information that its customers provide with the expectation that HomeAway will protect and safeguard it—all without compliance with any of the strict limitations and conditions imposed by the SCA.  The City's attempt to evade the SCA by purporting to require HomeAway to obtain "consent" to the disclosure of personal and confidential information from its users—and by deeming such users to have "consent[ed]"—fails for multiple reasons.  Under the SCA, consent is not a proper means of obtaining the content of a user's communication records.  And for information as to which consent may be appropriate, such consent must be obtained by the government directly, not through a third-party service provider.  In addition, as should be obvious, consent must be voluntary.  But neither HomeAway nor its users would agree to this unprecedented invasion of their federally protected privacy rights.  Simply put, although consent can be an exception to limitations on disclosure imposed by the SCA, the forced or deemed "consent" that the City tries to manufacture here does not satisfy that exception.

12.      *Second*, the Ordinance violates the Fourth Amendment of the United States Constitution, which protects the right to be secure in one's persons, papers, and effects, and to be free from unreasonable searches and seizures affecting that right.  The Fourth Amendment

extends to private personal and confidential information of the sort at issue here.  Notwithstanding these protections, the Ordinance would require HomeAway to disclose private business records and personal user information in violation of the Fourth Amendment's privacy rights afforded to HomeAway and its users.  Although the Ordinance purports to require users to "consent" to such disclosure as a condition to using a platform's service, laws that require individuals to "waive" their Fourth Amendment rights are presumptively unlawful.  HomeAway has standing to enforce both its own Fourth Amendment rights and those of its customers whose information the Ordinance demands be disclosed.

13.     *Third*, just as it violates the Fourth Amendment, the Ordinance violates Article I § 12 of the New York State Constitution, the protections of which parallel the Fourth Amendment.  The requirement to disclose protected information is in direct conflict with the right of the people to be secure in their persons, papers, and effects against unreasonable search and seizures as provided by the New York State Constitution.

14.     *Fourth*, the Ordinance as written violates the First and Fourteenth Amendments of the U.S. Constitution, and the corresponding provision of the New York State Constitution, Article I, § 8.  The Ordinance would compel HomeAway either to stop listing properties for its customers, or to require its customers to provide "consent" to disclosure of their private personal and financial information.  To obtain this "consent," HomeAway would be required to make prescribed statements about the requirements of the Ordinance and "advise" or "provide notice" to its users that the mere use of a booking platform constitutes consent to the disclosure to the City of their personal and financial information.  HomeAway does not want to make these statements for several reasons, but most importantly, because they are not true—users do not relinquish privacy rights protected by the U.S. and New York State Constitutions and federal law

6

simply by using an online service.  The First Amendment protects the right of a person, including a commercial entity, to remain silent on issues that it would prefer not to address.  And HomeAway cannot be compelled by the City to disseminate the patently false and controversial message that the Ordinance purports to require.

15.     Failure to enjoin the Ordinance will cause irreparable harm to HomeAway and its customers and will harm the public interest.  Absent an injunction, HomeAway will face a Hobson's choice.  On one hand, it can try to comply with the unlawful demands of the Ordinance—a path that will (1) disclose sensitive and protected information to the City without any legal process in violation of the U.S. and New York State Constitutions and the SCA— disclosures that cannot later be undone and that would expose HomeAway to litigation by customers for the unlawful disclosure of their information, (2) compel the dissemination of a false, misleading, and undisputedly controversial government-mandated message with which HomeAway disagrees and that it does not want to make in contravention of the First Amendment, and (3) lead to a loss of business and goodwill, and to reputational harm, for HomeAway because customers will not want to consent to the disclosure of their personal and financial information, will view HomeAway's demands for consent as offensive, and likely will choose not to list with HomeAway.  HomeAway's other option would be to cease conducting its lawful business enterprise that benefits many New York residents, increases commerce in the City, and benefits visitors and tourists.  As a consequence, HomeAway would suffer loss of substantial business revenues and customer goodwill.  The first option would severely harm the public interest in ensuring the security and confidentiality of private personal and financial information that customers share with internet-based services.  Both options would harm the public interest in ensuring a viable home-sharing business within the City.

## II.     PARTIES

16.     Plaintiff HomeAway is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business in Austin, Texas.  HomeAway maintains websites that provide an online marketplace for people to list, search, and book short-term and vacation housing accommodations.

17.     Defendant City of New York is an incorporated municipality within the State of New York.

## III.     JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983 because HomeAway alleges violations of its rights under the U.S. Constitution and laws of the United States.

19.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over HomeAway's claims arising under the New York State Constitution because they are so related to the federal claims asserted in this action that they form part of the same case or controversy under Article III of the United States Constitution.

20.     This Court may declare the legal rights and obligations of the parties in this action pursuant to 28 U.S.C. § 2201 because the action presents an actual case or controversy within the Court's jurisdiction.

21.     Venue is proper under 28 U.S.C. § 1391 because the defendant is located and resides in this judicial district and in the State of New York, and because a substantial part of the events giving rise to the claims for relief occurred in this judicial district, or, in the alternative, if there is no district in which an action otherwise could be brought, because the defendant is subject to personal jurisdiction in this district.

8

## IV.     FACTUAL ALLEGATIONS

### HomeAway

22.     HomeAway is a world leader in vacation rentals, with websites representing more than two million online bookable listings, and is part of the Expedia Group family of brands. HomeAway was founded in 2006 and is based in Austin, Texas.

23.     Through HomeAway, homeowners from around the globe may list their properties for vacation or short-term rental, and guests may search for and find available properties that meet their criteria.

24.     HomeAway operates three short-term rental websites directed principally to individuals in the United States:  HomeAway.com, VRBO.com, and VacationRentals.com.  These websites together represent one of the largest vacation rental listing networks in the world.

25.     For over 10 years, HomeAway has focused on offering families a way to vacation together by facilitating the listing of homes for rental, including for activities such as sightseeing in the Big Apple.  By renting a home, families can have the space and privacy to enjoy their vacation together in a residential environment.  Whereas hotels and shared accommodations might focus on providing a comfortable overnight stay for a single guest, HomeAway seeks to facilitate an affordable and home-like experience for families to spend their vacation time together.  The service also provides a way for homeowners to earn additional income to meet their financial needs.

26.     Through HomeAway's websites, guests can search for fully furnished, privately owned residential properties, including homes, condominiums, villas, cabins, houseboats, and other properties that owners rent to the public on a short-term basis.  HomeAway's websites bring together millions of guests seeking vacation rentals in all 50 states and in 190 countries.

27.     Homeowners provide the content for the listings they post on HomeAway websites, including information about the property, amenities, availability, and rental rates and terms.  The process for listing properties on HomeAway is automated, so that a listing appears on the website almost immediately after it is posted by a homeowner.  Although HomeAway retains rights to block or remove listings, it does not manually review all listings when they are submitted.  Among other problems, such advance review would undermine the efficiencies and convenience that the website offers and that are important to guests looking for available rentals.

28.     Guests who use HomeAway's websites arrange their reservations and other details directly with the homeowners.  They can message each other through HomeAway's platform through a service called HomeAway Secured Communication, or exchange telephone numbers or personal email addresses and communicate with one another directly.  HomeAway also offers homeowners and guests an online booking feature and the option to make payments online. Payments made through that feature are processed by a third-party service.

29.     HomeAway currently has over 2,500 listings for properties in the City.

**The Ordinance**

30.     On October 21, 2016, New York State passed a law amending its Multiple Dwelling Law ("MDL") and the Administrative Code of New York City to make it "unlawful to advertise the occupancy or use" of accommodations that could not lawfully be rented out pursuant to the MDL.  MDL § 121(1); N.Y.C. Admin. Code § 27-287.1(1) (collectively, the "Advertising Ordinance").  The MDL defines "advertise" to mean "any form of communication for marketing that is used to encourage, persuade or manipulate viewers, readers or listeners into contracting for goods and/or services as may be viewed through various media including, but not limited to, …

10

websites."  MDL § 121(2).  The stated purpose of the Advertising Ordinance was to protect

affordable housing and target illegal shadow hotels.[1]

31.     The Advertising Ordinance was challenged on various grounds and, ultimately,

that case was settled.  The City has not tried to enforce the Advertising Ordinance against online

booking platforms—rather, enforcement has been limited against individual hosts.

32.     The Ordinance at issue here was introduced on June 7, 2018.  According to

Councilwoman Carlina Rivera, who introduced the bill, and mirroring the stated goal of the

Advertising Ordinance, the stated purposes of the Ordinance was to protect affordable housing

and use data to allow for "more prosecution of bad actors."[2]  The Mayor signed the Ordinance

into law on August 6, 2018, and it is to go into effect 180 days thereafter.

33.     The new Ordinance, in an abrupt reversal of course, now specifically targets online

booking platforms, and exposes them to significant—and potentially crippling—monetary fines

for failing to comply with its provisions.  The Ordinance conscripts booking services and online

platforms into enforcement arms of the City by requiring them to turn over large amounts of

highly sensitive personal and financial information about their customers—all without any

showing that any of these customers violated the law—for the ostensible purposes of allowing the

City to go after what it calls "bad actors."  But in fact, as shown below, the clear and certain effect

of the Ordinance will be to deter customers of HomeAway and similar internet services from

employing those services out of fear that their confidential personal and financial information will

---

[1]  Nathan Ingraham, *New York passes law making it illegal to list short-term rentals on Airbnb (update)*, ENGADGET (last updated May 1, 2017), https://www.engadget.com/2016/10/21/new-york-passes-law-making-it-illegal-to-list-short-term-rentals/.

[2]  Luis Ferré-Sadurní, *To Curb Illegal Airbnbs, New York City Wants to Collect Data on Hosts*, NEW YORK TIMES (June 26, 2018), https://www.nytimes.com/2018/06/26/nyregion/illegal-airbnb-new-york-city-bill.html.

be exposed to disclosure to the City and possibly to third parties, in a manner that will give the customers no ability to control the use or further dissemination of that information.

34.     If allowed to go into effect, the Ordinance will require any person or entity who, for a fee, provides "one or more online, computer or application-based platforms that individually or collectively can be used to (i) list or advertise offers for short-term rentals, and (ii) either accept such offers, or reserve or pay for such rentals," N.Y.C. Admin. Code § 26-2101, to submit to the City, on a monthly basis, "a report of transactions for which the booking service charged, collected or received a fee." *Id*. § 26-2102(a).  This required monthly report must contain, for each person listing a rental unit on the platform:

> (1)  The physical address of the short-term rental associated with such transaction, including the street name, street number, apartment or unit number, borough or county, and zip code;
>
> (2)  The full legal name, physical address, phone number, and email address of the host of such short-term rental and the uniform resource locator (URL) and the individualized name and number of such host on such booking service's platform;
>
> (3)  The individualized name and number and the URL of such advertisement or listing;
>
> (4)  A statement as to whether such short-term rental transaction involved (i) short-term rental of the entirety of a dwelling unit or housing accommodations in a building or (ii) short-term rental of part of such unit or housing accommodations;
>
> (5)  The total number of days that the dwelling unit, part thereof, or housing accommodations in a building were rented as a short-term rental through such booking service's platform;
>
> (6) The total amount of fees received by such booking service for such short-term rental; and

> (7)  If such booking service collects rent for short-term rentals on behalf of such host, (i) the total amount of such rent received by such booking service and transmitted to such host and (ii) the account name and consistently anonymized identifier for the account number for the account used by such host to receive payments from such booking service or, if such booking service provides an explanation why such anonymized identifiers are unavailable, the account name and account number for such account.

N.Y.C. Admin. Code § 26-2102(a).

35.     These provisions would require HomeAway to turn over confidential, sensitive personal and financial information about its customers that is not made publicly available through its platform or other means, including the full legal names, home addresses, telephone numbers, and email addresses of hosts, as well as detailed information about how they use their private property and whether and when they invite others into their homes.  And, depending on how the Ordinance is interpreted, its final provision also could call for disclosure of detailed financial information, including bank account information.  When taken together, this information would enable the City to identify, contact, target, and monitor thousands of hosts, including those who are hosting legally and should not be a target of the City's purported enforcement efforts.  And to the extent the reports would require financial information, that information could expose customers' bank account and credit card information to disclosure to the City, other government agencies, and possibly third parties.

36.     The Ordinance compels HomeAway to disclose this confidential and sensitive personal and financial information without any legal process or pre-compliance review.  To be clear, the Ordinance allows the City to report the required information for all transactions by all customers, regardless of whether the City suspects that a transaction or customer is violating the City's short-term rental law, and without the benefit of a warrant, a court order, or even an

administrative subpoena.  HomeAway's consistent policy and practice is to disclose protected information to governmental entities only in response to valid legal requests.

37.     The City's Office of Special Enforcement (the "OSE"), which is charged with enforcing the City's short-term rental laws, can and does serve subpoenas on HomeAway in connection with its enforcement efforts.  This process is lawful and constitutional when done properly—appropriate legal process is obtained via a subpoena, the subpoena is targeted towards specific suspected misconduct and is subject to a pre-compliance review process, and the process usually allows for notice to be provided to targeted individuals so that they have the ability to object to the production of their personal and sensitive information.  HomeAway complies with this legal process and provides information responsive to the City's investigative and enforcement efforts with appropriate pre-compliance review.  The Ordinance, if upheld, would completely circumvent this acceptable process.

38.     HomeAway does not collect, or require users to provide, certain categories of information that the Ordinance mandates for inclusion in the monthly reports.  For example, HomeAway does not ask hosts whether a short-term rental is being offered for the entire property or only a portion.  And such a request would make little sense, given that at least some hosts will rent the entire property at certain times and only portions of the property at other times.  Yet the Ordinance requires disclosure of this information.

39.     The Ordinance also would require HomeAway to disclose its own, competitively sensitive information that is not made publicly available and that HomeAway takes substantial measures to safeguard and protect, including technical information about the listings on its platform, the identities and contact information of its customers, how customers use its services, and the amounts and breakdowns of its revenues.

40.     Under the Ordinance, once the City has possession and control of this confidential and sensitive personal and financial information, it appears to have virtually unbridled discretion to use it in any way it chooses, including for purposes that are wholly unrelated to enforcing its short-term rental laws.  Although Section 26-2105 states that the reported information "shall be available for public review only to the extent required by federal, state and local law,"  N.Y.C. Admin. Code § 26-2105, the Ordinance contains no provisions clearly preventing the City or its employees from disclosing the information to other city offices and officials, or even third parties, without the consent of the platform or the customers from whom the information was obtained. The City is given carte blanche to share the information internally among city agencies and employees and third parties, even if those agencies, employees, and third parties perform no role in enforcing the City's short-term rental laws.  Moreover, nothing on the face of the Ordinance would prevent the City from turning the data over to any member of the public (including competitors or forces hostile to short-term rentals) who files a request under New York's Freedom of Information Law.

41.     Taken together—and particularly in light of the "forced consent" provisions discussed below—the consequences of these aspects of the Ordinance are staggering, particularly at a time when the attention of legislators, courts, the press, and the public is intensely focused on *protecting* the privacy of personal information shared by consumers on the internet.  Recent reports of massive data breaches and other misuses of customers' personal and financial information have caused a public outcry, raising concerns about identity theft, invasions of privacy, and other harms.  Policymakers and members of the public have called for *greater* measures to protect against the exposure of private information about users of internet services. And yet the City would undertake to facilitate—indeed, require—precisely that type of risk, by

15

requiring customers who use the covered internet services to open up their confidential personal and financial information to possibly unlimited use and disclosure by the City.

42.     In addition to its reporting requirements—and as a transparent response to the fact that those requirements violate the SCA, among other laws—the Ordinance purports to require HomeAway to obtain "consent from the person offering such unit for short-term rental to provide the information" required to be produced.  N.Y.C. Admin. Code § 26-2102(b).  Under the Ordinance, consent may be obtained by "advising or providing notice to a user of the booking service that new or continuing use of such booking service as a host constitutes consent to such disclosure." *Id.*  Essentially, the Ordinance conditions a customer's use of an internet-based home-sharing site on "consent" to the disclosure of their confidential personal and financial information to the City, with no meaningful limit on the City's ability to pass that information along.  This so-called "consent" provision exacerbates the reporting provisions by forcing customers to give up their privacy interests as a condition to using a web-based service—a tactic that, again, runs directly against the strong public interest in protecting the privacy and confidentiality of customers' personal and financial information.

43.     The Ordinance has been harshly criticized by advocates for consumer privacy protection and civil rights.  For example, during public hearings on the Ordinance, a senior staff attorney for the American Civil Liberties Union (the "ACLU") stated that the Ordinance "mandates the reporting of personal information that New Yorkers in quasi law enforcement databases without any apparent privacy protections."  She explained that the ACLU is "very concerned that [the Ordinance] mandates the collection uploading of all of the host data to OSE without any consideration afforded to the potential for privacy violation."  And she observed that "[t]he legislation fails to provide adequate oversight and privacy protections for the host.  There is

no data retention policy. That creates the likelihood of security breaches regarding information about the host."

44. As the Ordinance is written, if a customer does *not* consent to disclosure of their private information, HomeAway appears to have three choices. First, it could refuse to post the person's listing, or take any existing listing down—such that the Ordinance would effectively prohibit displaying a listing *unless* the required consent is provided. Second, HomeAway could display the customer's listing, and include the customer's information in the report, even though the customer has not consented—a course of action that would expose HomeAway to significant potential liabilities to the non-consenting customer. Indeed, if HomeAway were to divulge the contents of communications or customer records without its users' "*lawful* consent," it could face civil liability in private actions from users. 18 U.S.C. § 2702(a), (b)(2), (c)(3), § 2707(a), (c). Finally, HomeAway could display the listing, but defy the Ordinance by not including the customer's information in the required monthly report—a result that the statute forbids by providing that "[i]t shall not be a defense to a violation of [the reporting requirement] that the book service did not obtain consent." N.Y.C. Admin. Code § 26-2102(b). Because the latter two options are untenable—disclosing the data without customer consent, or willfully violating the Ordinance and risking penalties—the only real option the Ordinance offers in the case of non-consenting customers is not to display customers' listings, so that the Ordinance is, in all but name, a prohibition on displaying listings provided by non-consenting customers.

45. The penalties provision of the Ordinance makes clear that any deviation will be subject to harsh and potentially crippling penalties. A home-sharing platform such as HomeAway that fails to submit a monthly report "shall be liable for a civil penalty, to be assessed once per reporting period for each set of records corresponding to a listing which is missing, incomplete or

inaccurate." N.Y.C. Admin. Code § 26-2104. The "civil penalty shall not be more than *the greater of $1,500* or the total fees collected during the preceding year by the booking service related to the listing." *Id.* (emphasis added). Accordingly, HomeAway could be liable for at least $1,500 per month for each and every listing on its websites for which it does not provide the required customer information.

46.      By virtue of the 180-day effective date provision, the Ordinance is scheduled to go into effect on February 2, 2019. But the City is authorized, before the effective date, to "take such measures as are necessary for its implementation, including the promulgation of rules," meaning that implementation of the new statute through the promulgation of rules could begin immediately. *See* N.Y.C. Admin. Code § 26-2104(2).

47.      To prepare the monthly reports and produce them to the City as required by Ordinance, HomeAway will be forced to take and implement several measures, including, but not limited to, the following: (a) communicating with owners about the new law and obtaining their consent; (b) creating new processes and controls and revising its systems to ensure that it lists only properties for which owners have consented to disclosure of their personal information; (c) creating new processes and controls and revising its systems to try to carve out the class of dwellings that are exempt from the law and appear on the City's "exempt" list, which according to the Ordinance would be updated on an ongoing basis; (d) creating new processes and controls and revising its systems to carve out the many hotel and bed-and-breakfast listings that also appear on its websites and that are not subject to the City's short-term rental law; (e) devising a program and process to collect the relevant data and produce the required monthly reports to the City; and (f) handling an increased volume of questions and complaints from affected owners.

This will be an immensely burdensome task and one that likely cannot be done without at least some good faith errors—and resulting fines or exposure to liability.

48.     HomeAway is not aware of any other municipality in the United States that requires disclosure by online home-sharing platforms of the sort that the City purports to require here.  And neither New York City, nor any other city, nor any state, nor the federal government has created a regime like this one that tries to force the disclosure to law enforcement of personal information about *every* user of an online service through a contrived and counterfactual device such as "forced consent," simply because some individuals might use the service to break the law.

## V.     CLAIMS FOR RELIEF

### CLAIM 1:  VIOLATION OF AND PREEMPTION UNDER THE STORED COMMUNICATIONS ACT, 18 U.S.C. § 2701 *ET SEQ.*, AND CLAIM FOR INJUNCTIVE RELIEF PURSUANT TO 42 U.S.C. § 1983 AND THE COURT'S EQUITABLE POWERS

49.     HomeAway incorporates all previous paragraphs as if fully set forth herein.

50.     HomeAway is a provider of an electronic communication services under the SCA because it provides customers "the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15).  HomeAway is also a provider of remote computing services because it provides customers "computer storage or processing services by means of an electronic communications system."  18 U.S.C. § 2711(2).

51.     Under the SCA, "a provider of remote computing service or electronic communications service to the public shall not knowingly divulge a record or other information pertaining to a subscriber to or customer of such service … to any governmental entity" without a subpoena or other proper legal process.  18 U.S.C. §§ 2702(a)-(c).  And a government entity may not require the disclosure of the contents of a subscriber's electronic communications, or of other

records or information pertaining to such a subscriber, without following specified processes.  *Id.* § 2703(a)-(c).

52.    The Ordinance violates, conflicts with, would frustrate the purpose of, and accordingly is preempted by, the SCA because it would require HomeAway to "divulge a record or other information pertaining to a subscriber to or customer of such service," including "the contents of … electronic communication[s]," to a "governmental entity" without a subpoena or other legal process.  18 U.S.C. §§ 2702(a)(3), (c)(1); 2703(a)-(c).

53.    Under the SCA, the government may obtain certain limited categories of information if the government obtains the consent of the user.  18 U.S.C. § 2703(c).  But the "consent" contemplated by the Ordinance does not satisfy the SCA, for several reasons.  *First*, consent is not a means by which the government may obtain the content of communications such as may be called for by the Ordinance, as alleged above.  18 U.S.C. § 2703(a)-(b).  *Second*, even for records that may be obtained via consent, the government, not service providers, must obtain the consent.  *See*, *e.g.*, *Freedman v. America. Online, Inc.*, 303 F. Supp. 2d 121, 129 (D. Conn. 2004).  *Third*, the consent contemplated by the Ordinance would not be voluntary because it would be forced on customers as a condition to engaging in transactions on the internet.  *Fourth*, the SCA requires affirmative consent, but under the terms of the Ordinance, the mere use of the website would be deemed consent to disclosure.  *Fifth*, the consent provisions of the Ordinance are entirely illusory because HomeAway would be required to make the disclosures in the monthly transaction reports *even if the user has not consented*.

54.    Pursuant to 42 U.S.C. § 1983 and the Court's equitable powers, HomeAway seeks injunctive relief against the City, whose enforcement of the Ordinance against HomeAway would conflict with and violate the SCA.

**CLAIM 2:  VIOLATION OF THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION, AND CLAIM FOR INJUNCTIVE RELIEF, PURSUANT TO 42 U.S.C. § 1983 AND THE COURT'S EQUITABLE POWERS**

55.     HomeAway incorporates all previous paragraphs as if fully set forth herein.

56.     The Fourth Amendment of the U.S. Constitution protects the right of people "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."

57.     The Ordinance violates HomeAway's and its customers' right to be free from such unreasonable searches and seizures.

58.     HomeAway has a reasonable expectation of privacy in its business records and information, which it owns.  Similarly, HomeAway's users have a reasonable expectation of privacy in the personal information they provide, and the direct communications in which they engage, when using the HomeAway platform, in which they maintain property rights.

59.     The Ordinance requires HomeAway to disclose confidential information relating to its sensitive business information and user information.  Forcing HomeAway to disclose this private and sensitive information to the City without a warrant, subpoena, or any other proper legal process, and without any pre-compliance review, would constitute an unreasonable search and seizure.  The Ordinance also would authorize the City to conduct surveillance of HomeAway's customers and their private details, transactions, and financial information.  This, too, would violate the Fourth Amendment.

60.     The City's attempt to force HomeAway to disclose such private materials violates the Fourth Amendment rights of both HomeAway and its customers.  HomeAway has standing to pursue this claim in its own right because it is in possession of the information of which the City seeks to force disclosure, and the purported disclosure obligations run directly against HomeAway.  HomeAway also may vindicate the constitutional rights of its subscribers because the constitutional injury threatened by the Ordinance—HomeAway's compelled disclosure of

21

private subscriber information to the City—may not be known to the individual subscribers, given that notice would be provided through a posting on the website that users may not see and to which they may not pay attention, and individual subscribers would not be able to defend their constitutional rights effectively, given that the disclosure obligations under the Ordinance run directly to HomeAway.  Absent enforcement of their rights by HomeAway, there is a substantial likelihood that these violations of these third parties' rights could evade detection.

61.     Because the Fourth Amendment does not permit the government to coerce consent, the City's requirement that HomeAway and its users consent to the unreasonable search and seizure of their confidential business and personal information in order to employ HomeAway's internet-based service is both unlawful and invalid.

62.     Pursuant to 42 U.S.C. § 1983 and the Court's equitable powers, HomeAway seeks injunctive relief against the City, whose enforcement of the Ordinance against HomeAway would conflict with and violate the Fourth Amendment of the U.S. Constitution.

## CLAIM 3:  VIOLATION OF ARTICLE I § 12 OF THE NEW YORK STATE CONSTITUTION, AND CLAIM FOR INJUNCTIVE RELIEF PURSUANT TO THE COURT'S EQUITABLE POWERS

63.     HomeAway incorporates all previous paragraphs as if fully set forth herein.

64.     Similar to the Fourth Amendment of the U.S. Constitution, Article I § 12 of the New York State Constitution protects the right of people against unreasonable searches and seizures.  The Ordinance violates Article I § 12 of the New York State Constitution.  "New York's State Constitution, article I, § 12, affords greater protection against warrantless searches than the U.S. Constitution."  *5 Borough Pawn, LLC v. City of New York*, 640 F. Supp. 2d 268, 278 (S.D.N.Y. 2009).

65.     HomeAway has a reasonable expectation of privacy in its confidential business records.  Likewise, HomeAway's users have a reasonable expectation of privacy in their personal

22

information and communications, and also have a reasonable expectation of privacy against government surveillance of their personal information and transactions.

66.     The Ordinance compels HomeAway to disclose confidential and sensitive information without a warrant, subpoena or any other proper legal process, or pre-compliance review, in violation of the protection against unreasonable search and seizure accorded by Article I § 12.

67.     The purported "consent" provision of the Ordinance cannot effect a forced waiver of the rights described herein.

68.     Pursuant to the Court's equitable powers, HomeAway seeks injunctive relief against the City, whose enforcement of the Ordinance against HomeAway would conflict with and violate the New York State Constitution.

**CLAIM 4:  VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION, AND CLAIM FOR INJUNCTIVE RELIEF, PURSUANT TO 42 U.S.C. § 1983 AND THE COURT'S EQUITABLE POWERS**

69.     HomeAway incorporates all previous paragraphs as if fully set forth herein.

70.     The First Amendment prohibits the government from passing laws "abridging the freedom of speech."  The Fourteenth Amendment of the U.S. Constitution incorporates the First Amendment to the States.

71.      The Ordinance would violate the First and Fourteenth Amendments by requiring booking services like HomeAway to issue specific statements to its users about the requirements of the Ordinance with which it does not agree and that it would not voluntarily choose to make. *See* N.Y.C. Admin. Code § 2102(b).  These compelled notices are not tailored, narrowly or otherwise, to advance a substantial governmental interest.

72.     The Ordinance would expressly require HomeAway to communicate to users of its home-sharing platform a message that is prescribed and mandated by the City, namely that

(1) users must consent to the production of their sensitive personal data to the City, (2) their use of the platform will constitute consent, and (3) their sensitive personal data is subject to being turned over to a City agency that targets hosts for enforcement activity.  N.Y.C. Admin. Code § 26-2102(b).

73.     The Ordinance would burden HomeAway's protected First Amendment speech because it would require HomeAway to communicate a message to its users that HomeAway would not otherwise choose to communicate.  In fact, HomeAway strongly disagrees with the statements that the Ordinance would require it to make.

74.     The "right to speak and the right to refrain from speaking" are two sides of the same constitutional coin.  *Wooley v. Maynard*, 430 U.S. 705, 714 (1977).  Accordingly, the First Amendment prohibits the government from requiring persons to "voice ideas with which they disagree."  *Janus v. Am. Fed'n of State, Cty., & Mun. Employees, Council,* 138 S. Ct. 2448, 2464 (2018).

75.     HomeAway would be injured by being forced to convey the City's message, not only because it would have to deliver a statement with which it does not agree, but also because that false message would damage its relationships with its customers.  HomeAway would be seen by its customers as an arm of the government, intent on stripping them of their personal information as a condition to doing business on HomeAway's site, and this negative perception would damage HomeAway's goodwill with its customers and its business reputation.

76.     Pursuant to 42 U.S.C. § 1983 and the Court's equitable powers, HomeAway seeks injunctive relief against the City, whose enforcement of the Ordinance against HomeAway would violate the First and Fourteenth Amendment of the Constitution.

**CLAIM 5:  VIOLATION OF ARTICLE 1, SECTION 8 OF THE NEW YORK STATE CONSTITUTION, AND CLAIM FOR INJUNCTIVE RELIEF PURSUANT TO THE COURT'S EQUITABLE POWERS**

77.     HomeAway incorporates all previous paragraphs as if fully set forth herein.

78.     Article I, Section 8 of the New York State Constitution, similar to the First Amendment to the United States Constitution, prohibits any law "to restrain or abridge the liberty of speech."  N.Y. Const., Art. I, § 8.

79.     The Ordinance violates Article I, Section 8 for the reasons set out above—it would compel HomeAway to endorse a government-crafted message with which it does not agree, in a way that would cause harm to its relationships with its customers and damages its goodwill with such customers.

80.     Pursuant to the Court's equitable powers, HomeAway seeks injunctive relief against the City, whose enforcement of the Ordinance against HomeAway would conflict with and violate the New York State Constitution.

**CLAIM 6:  DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201**

81.     HomeAway incorporates all previous paragraphs as if fully set forth herein.

82.     This action presents an actual case or controversy between HomeAway and Defendant concerning the validity and enforceability of the Ordinance.

83.     Because the Ordinance violates the SCA, 18 U.S.C. § 2701 *et seq.*, the First, Fourth, and Fourteenth Amendments of the U.S. Constitution, and Article I, Sections 8 and 12 of the New York State Constitution, HomeAway seeks and is entitled to a declaration pursuant to 28 U.S.C. § 2201 that the Ordinance is invalid and unenforceable for the reasons stated above.

## ALLEGATIONS SUPPORTING INJUNCTIVE RELIEF

84.    HomeAway incorporates all previous paragraphs as if fully set forth herein.

85.    HomeAway and its customers will suffer irreparable harm, not compensable through money damages, if the Ordinance is not enjoined.  Once the customers' confidential personal and financial information is disclosed to the City, and possibly passed on by the City to others, as described above, neither the customers nor HomeAway will be able to undo that disclosure and recover the privacy of that compromised information.  And that type of privacy-related harm, once it occurred, could not be remedied by monetary damages.

86.    Likewise, the damage to HomeAway's customer relationships, its business reputation, and its goodwill, as well as its own proprietary interests in the information that would be subject to disclosure under the Ordinance, could not be repaired or restored once the required disclosures were made and the required "consent" provisions forcing HomeAway to obtain "consent" from its customers were implemented.  The loss of HomeAway's relationships, business reputation, and customer goodwill could not be remedied by monetary damages.

87.    The Ordinance also would cause harm to the public interest.  As alleged above, there is a strong and current public interest in protecting the privacy and confidentiality of personal and financial information shared by customers with internet-based services—including, for example, a strong public interest in protecting against data breaches, identity theft, and similar events that compromise the confidentiality and privacy of consumer data on the internet.  The Ordinance directly harms these public interests by exposing such confidential personal and financial information without any meaningful protections.  There also is a public interest in protecting against government surveillance of lawful private transactions, an interest that, again, would be destroyed by operation of the Ordinance.

26

88.     By contrast, an injunction would not disservice the public interest.  Given the stated purpose of the Ordinance—to regulate unlawful short-term rentals—the public interest could be unaffected by an injunction, because the City could employ alternative means to enforce its short-term rental laws.

89.     The balance of hardships tips heavily in favor of an injunction.  The City claims that it needs the Ordinance to enforce its housing laws, but there are multiple ways in which the City can fulfill its enforcement objectives, including those described above, without throwing open the door to the confidential personal and financial information of every customer who uses an internet-based home-sharing service.  In contrast, the hardship to HomeAway and its customers, as described above, would be irreparable and unavoidable.

## VI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff HomeAway respectfully requests that the Court:

90.     Declare that the Ordinance violates and is preempted by the SCA, 18 U.S.C. § 2701 *et seq.*, and is unconstitutional under the First, Fourth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 8 and 12 of the New York State Constitution;

91.     Preliminarily and permanently enjoin the City and its agencies, officers, agents, servants, employees, and attorneys, and those persons in concert or participation with them from taking any actions to enforce the Ordinance against HomeAway;

92.     Award HomeAway and its reasonable costs and attorneys' fees under 42 U.S.C. § 1988; and

93.     Award HomeAway other and further relief as the Court deems just and proper.

DATED:  August 24, 2018

GIBSON, DUNN & CRUTCHER LLP


By:   /s/ Kristin A. Linsley
     Kristin A. Linsley
     Joshua D. Dick (*pro hac vice* forthcoming)
     Gibson, Dunn & Crutcher LLP
     555 Mission Street, Suite 3000
     San Francisco, CA 94105-0921
     (415) 393-8395
     (415) 374-8471 (fax)
     KLinsley@gibsondunn.com
     JDick@gibsondunn.com

     Mylan L. Denerstein
     Gibson, Dunn & Crutcher LLP
     200 Park Avenue, Floor 47
     New York, NY 10166-0193
     (212) 351-3850
     (212) 351-6350 (fax)
     MDenerstein@gibsondunn.com

     *Attorneys for Plaintiff HomeAway.com, Inc.*