UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HOMEAWAY.COM, INC.,

*Plaintiff*,

v.

CITY OF NEW YORK,

*Defendant*.

No. 18 Civ. 7742 (PAE)

---

## MEMORANDUM OF LAW IN SUPPORT OF MOTION
## BY HOMEAWAY.COM, INC. FOR ATTORNEY'S FEES AND COSTS

GIBSON, DUNN & CRUTCHER LLP

Kristin A. Linsley
Joshua D. Dick
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
(415) 393-8395
KLinsley@gibsondunn.com
JDick@gibsondunn.com

Mylan Denerstein
Patrick Hayden
200 Park Avenue, Floor 47
New York, NY 10166-0193
(212) 351-4000
MDenerstein@gibsondunn.com
PHayden@gibsondunn.com

*Attorneys for Plaintiff HomeAway.com, Inc.*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ......................................................................................................................3

LEGAL STANDARD...............................................................................................................8

ARGUMENT ...........................................................................................................................9

    I.      The Court Should Grant HomeAway's Request for Reasonable Attorney's
          Fees ............................................................................................................9

          A.    HomeAway Is A "Prevailing Party" ............................................................9

          B.    The Requested Fees Amount Are Reasonable ...........................................13

    II.     The Court Should Grant HomeAway's Request for Reasonable Costs.................21

CONCLUSION........................................................................................................................22

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Airbnb, Inc. v. City of Boston*,
  386 F. Supp. 3d 113 (D. Mass. 2019) ...................................................................21

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*,
  369 F.3d 91 (2d Cir. 2004)...................................................................................22

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,
  522 F.3d 182 (2d Cir. 2008).....................................................................13, 19, 21

*Bailey v. Pataki*,
  2016 WL 3545941 (S.D.N.Y. June 16, 2016) .......................................................16

*Balark v. City of Chicago*,
  81 F.3d 658 (7th Cir. 1996) ..................................................................................13

*Bergerson v. New York State Office of Mental Health*,
  652 F.3d 277 (2d Cir. 2011)..................................................................................19

*Blum v. Stenson*,
  465 U.S. 886 (1984)...............................................................................................19

*Carpenter v. United States*,
  138 S. Ct. 2206 (2018)...........................................................................................18

*Chabad Lubavitch of Litchfield Cty., Inc. v. Litchfield Historic Dist. Comm'n*,
  934 F.3d 238 (2d Cir. 2019).....................................................................................9

*City of Burlington v. Dague*,
  505 U.S. 557 (1992)...............................................................................................13

*City of Los Angeles v. Patel*,
  576 U.S. 409 (2015)....................................................................................4, 18, 21

*Common Cause/Georgia v. Billups*,
  554 F.3d 1340 (11th Cir. 2009) ...............................................................................9

*Davis v. City of New York*,
  2011 WL 4946243 (S.D.N.Y. Oct. 18, 2011) .......................................................14

*Dearmore v. City of Garland*,
  519 F.3d 517 (5th Cir. 2008) ..............................................................................9, 12

**TABLE OF AUTHORITIES** (*continued*)

Page(s)

*Doe v. Bridgeport Police Dep't*,
    468 F. Supp. 2d 333 (D. Conn. 2006) ......................................................................18

*Finch v. New York State Office of Children & Family Servs.*,
    861 F. Supp. 2d 145 (S.D.N.Y. 2012) .....................................................................21

*Gonzales v. Scanlinatella*,
    112 F. Supp. 3d 5 (S.D.N.Y. 2013) .........................................................................16

*Grant v. Martinez*,
    973 F.2d 96 (2d Cir. 1992) ......................................................................................13

*Haley v. Pataki*,
    106 F.3d 478 (2d Cir. 1997) ...........................................................................8, 9, 10

*Hanrahan v. Hampton*,
    446 U.S. 754 (1980) ..................................................................................................8

*Hensley v. Eckelhart*,
    461 U.S. 424 (1983) ....................................................................................8, 13, 21

*Hines v. City of Albany*,
    862 F.3d 215 (2d Cir. 2017) ....................................................................................17

*Kirsch v. Fleet St., Ltd.*,
    148 F.3d 149 (2d Cir. 1998) ....................................................................................13

*Knoeffler v. Town of Mamakating*,
    126 F. Supp. 2d 305 (S.D.N.Y. 2000) .....................................................................17

*Kuzma v. IRS*,
    821 F.2d 930 (2d Cir. 1987) ....................................................................................22

*LeBlanc-Sternberg v. Fletcher*,
    143 F.3d 748 (2d Cir. 1998) ..........................................................................8, 12, 13

*Luessenhop v. Clinton Cty.*,
    558 F. Supp. 2d 247 (N.D.N.Y. 2008) .....................................................................16

*LV v. N.Y. City Dep't of Educ.*,
    700 F. Supp. 2d 510 (S.D.N.Y. 2010) .....................................................................19

*Mahan v. Roc National, LLC*,
    2016 WL 4718018 (S.D.N.Y. Sept. 9, 2016) ...........................................................20

*Morris v. Eversley*,
    343 F. Supp. 2d 234 (S.D.N.Y. 2004) .....................................................................21

**TABLE OF AUTHORITIES** (*continued*)

Page(s)

*Ortiz De Arroyo v. Barcelo*,
  765 F.2d 275 (1st Cir. 1985) ................................................................. 15

*Pastre v. Weber*,
  800 F. Supp. 1120 (S.D.N.Y. 1991) ....................................................... 17

*People Against Police Violence v. City of Pittsburgh*,
  520 F.3d 226 (3d Cir. 2008) ................................................................... 10

*Planned Parenthood Minnesota v. Daugaard*,
  946 F. Supp. 2d 913 (D.S.D. 2013) ........................................................ 10

*Raishevich v. Foster*,
  247 F.3d 337 (2d Cir. 2001) ............................................................... 8, 12

*Reichman v. Bonsignore, Brignati & Mazzota P.C.*,
  818 F.2d 278 (2d Cir. 1987) ................................................................... 22

*Reiter v. MTA New York City Transit Auth.*,
  457 F.3d 224 (2d Cir. 2006) ........................................................... 19, 20

*Rogers Grp., Inc. v. City of Fayetteville*,
  683 F.3d 903 (8th Cir. 2012) ............................................................ 10, 12

*Ross v. Saltmarsh*,
  521 F. Supp. 753 (S.D.N.Y. 1981) ......................................................... 16

*Smith v. Robinson*,
  468 U.S. 992 (1984) ............................................................................... 12

*Sole v. Wyner*,
  551 U.S. 74 (2007) ................................................................................... 8

*Tidwell v. Schweiker*,
  677 F.2d 560 (7th Cir. 1982) ................................................................. 18

*Union of Orthodox Jewish Congregations of Am. v. Royal Food Distribs. LLC*,
  665 F. Supp. 2d 434 (S.D.N.Y. 2009) .................................................... 20

*Veasey v. Wilkins*,
  158 F. Supp. 3d 466 (E.D.N.C. 2016) .................................................. 9, 12

**Statutes**

42 U.S.C. § 1988(b) .................................................................................... 8

Local Law 2018/146 ............................................................................. 1, 3

iv

**TABLE OF AUTHORITIES** (*continued*)

                                                                                    Page(s)

Local Law 2020/64 ....................................................................................................11

**Other Authorities**

Allyson E. Gold, *Community Consequences of Airbnb*, 94 Wash. L. Rev. 1577
    (2019).............................................................................................................21

J.F. McCarrick, *Decade-High BigLaw Billing Rate Growth in 2019: Are D&O
    Insurers Paying More in Claims Defense for the Same or Worse Results?*,
    White & Williams LLP (Feb. 24, 2020) ....................................................20

S. Stokes, *Associate Hourly Billing Rates Surge Past $1K as Firms Snap Up
    Bankruptcy Work*, American Lawyer (May 22, 2020) ...........................20

Rory Van Loo, *The Missing Regulatory State: Monitoring Businesses in an Age of
    Surveillance*, 72 Vand. L. Rev. 1563 (2019) ..........................................21

D.C. Weiss, *At Least 3 BigLaw Firms Charge More than $1K Per Hour for Top
    Associates*, ABA Journal (May 27, 2020) ...............................................20

**Rules**

N.Y.C. Admin. Code §§ 26-2101–26-2105.......................................................1, 3, 6, 11

Plaintiff HomeAway.com, Inc. respectfully submits this Memorandum of Law in support of its motion for attorney's fees and costs.

## PRELIMINARY STATEMENT

The ordinance challenged in this case—Local Law 146, Administrative Code §§ 26-2101–2104 (the "Ordinance")—violated the Fourth Amendment rights of short-term rental hosting platforms like HomeAway by requiring them to turn over to the City large volumes of their customers' personal and financial data without any form of process—no warrant, no court order, no showing of probable cause, not even an administrative subpoena. These required disclosures would have taken the form of detailed monthly reports disclosing, for each short-term rental property listed on the platform, the property owner's name, address, phone number, and email address; the details of each booking transaction; specific information about how individual owners use and rent their properties; and, in some circumstances, personal bank accounts of owners or other payment information. Through litigation extending nearly two years, HomeAway ensured that the Ordinance would not take effect. HomeAway is entitled to an award of reasonable attorney's fees and costs as a prevailing party in those efforts.

The City signed the Ordinance into law in 2018, and HomeAway's counsel began preparing for litigation to enjoin the Ordinance as facially unconstitutional. Airbnb also filed suit, and the cases filed by the two companies were consolidated before this Court. In January 2019, this Court agreed that the Ordinance likely violated the Fourth Amendment and granted the motion by HomeAway and Airbnb for a preliminary injunction against the Ordinance. *See* Dkt. 62.[1] The Court explained that the Ordinance is, by all appearances, "devoid of any tailoring," with a

---

[1]  Unless noted otherwise, "Dkt." refers to docket entries in this action (No. 18 Civ. 7742), rather than in the related action brought by Airbnb, Inc. (No. 18 Civ. 7712).

"breathtaking" scale of mandatory production and without any "neutral forum in which a booking service could bring … a challenge."  *Id.* at 33–34, 39.

The City's continued defense of the Ordinance after this Court issued its preliminary injunction—despite the Court's thorough and clear message that HomeAway was likely to "succeed in invalidating the Ordinance as unreasonable under the Fourth Amendment," Dkt. 62 at 41—forced HomeAway into months of discovery and related disputes with the City—several of which disputes this Court resolved in HomeAway's favor.  On July 7, 2020, after nine months of significant additional litigation proceedings, the City finally amended the Ordinance, replacing it with a substantially narrower version.  And on October 6, 2020, the City moved the Court to dismiss this "action as moot" because the Ordinance's "reporting requirement … no longer exists by virtue of the City's amendments."  Dkt. 129 at 1–2.  The Court granted the City's motion on the following day.

As a result of HomeAway's successful efforts to secure a preliminary injunction against the Ordinance, the unconstitutional provisions of the Ordinance never went into effect.  The City agrees that the recently amended ordinance is "substantially different" from the original Ordinance that was "challenged by HomeAway in the instant action."  Dkt. 129 at 2.  That result benefits not only HomeAway, but all hosting platforms that list City properties and the users of those platforms, because considerable volumes of business records and customer's private information were not, and will not be, disclosed to the government by fiat.  This Court's ruling also will prevent the Ordinance from becoming precedent for other forms of "wholesale regulatory appropriation" of customer data and information—a troubling possibility this Court noted throughout this litigation. Dkt. 62 at 40.

Having achieved the relief sought when it filed suit in 2018, HomeAway now moves pursuant to 42 U.S.C. § 1988 for an award of reasonable attorney's fees and costs.  HomeAway seeks fees totaling $1,471,883.20, and costs in the amount of $30,467.50, for a total award of $1,502,350.70.  This sum represents 1,660 hours of attorney time at the discounted rates charged by HomeAway's counsel, Gibson, Dunn & Crutcher LLP ("Gibson Dunn").  HomeAway's success in obtaining an injunction against enforcement of the Ordinance and causing the City to amend the provisions that this Court found likely unconstitutional warrants the fees and costs requested.

## BACKGROUND

On June 6, 2018, the New York City Council proposed the Ordinance, which would have required home-sharing platforms like HomeAway, Airbnb, and others to submit detailed reports of all property listings in New York City on a monthly basis.  *See* Local Law 2018/146, *codified at* Admin. Code §§ 26-2101–26-2105.  The next day, HomeAway's counsel began evaluating the Ordinance and preparing a potential challenge.  *See* Decl. of Kristin A. Linsley ¶ 7.  Counsel began researching the law and developing legal arguments, then began drafting HomeAway's complaint, which raised Fourth Amendment issues of first impression.  *See id.*  Counsel for HomeAway and Airbnb also began discussing legal strategies and arguments and, although the parties would file their own complaints and preliminary injunction motions, worked together efficiently and coordinated their efforts to avoid undue repetition in their briefing and unnecessary burden on the Court.  *Id.* ¶ 11.

HomeAway and Airbnb filed their respective complaints in August 2018, *see* Dkt. 1, followed by preliminary injunction motions, *see* Dkts. 9–11.  HomeAway and Airbnb argued that the Ordinance should be enjoined because it likely violated the Fourth Amendment, as well as the Stored Communications Act and the First Amendment.  *See* Dkt. 1 ¶¶ 49–83; Dkt. 10 at 8–22.  The City's opposition consisted of a 35-page brief and 429 pages of declarations and exhibits, *see* Dkts.

19, 20, 21, all of which HomeAway and Airbnb addressed in their replies, *see* Dkt. 31.  On October 5, 2018, the Court held a lengthy hearing addressing the merits of the parties' arguments, including multiple questions by the Court to the City about the potential for a more targeted regulatory approach.  *See, e.g.*, Tr. of Oct. 5, 2018 Hr'g at 71:5–79:1, 87:24–88:24 (No. 18 Civ. 7712, Dkt. 80) ("Oct. 5, 2018 Hr'g Tr.").

On January 3, 2019, the Court granted Plaintiffs' motions for a preliminary injunction, finding that they were likely to succeed on the merits of their Fourth Amendment claims.  *See* Dkt. 62.  In a well-reasoned, 52-page opinion—fully half of which was devoted to the Fourth Amendment claims—the Court explained that the Ordinance was likely unreasonable in its scope and breadth:  it was, by all appearances, "devoid of any tailoring," and the "scale of the production" it required was "breathtaking."  *Id.* at 33–34.  Further, the Court explained, the Ordinance "fails to provide a neutral forum in which a booking service could bring … a challenge," as required by Supreme Court precedent.  *Id.* at 39 (citing *City of Los Angeles v. Patel*, 576 U.S. 409 (2015)).  Accordingly, the Court found it likely that HomeAway and Airbnb "will succeed in invalidating the Ordinance as unreasonable under the Fourth Amendment."  *Id.* at 41.[2]

---

[2]  On February 19, 2019, the City served an extraordinarily broad subpoena seeking much of the same information required by the Ordinance, only this time it sought to have HomeAway search through its records to determine whether any of its New York listings matched criteria that the City believed rendered listings unlawful.  *See* Linsley Decl. ¶ 23 & Ex. F.  The City also requested records as to over 800 specific identified listings.  *See* Linsley Decl. Ex. F.  After the parties attempted to reach a resolution, the City filed a motion to compel, which HomeAway has litigated, at further expense, in New York Supreme Court, arguing that the subpoena's demand for a dragnet search of all listings, without regard to any individualized suspicion, violated the same Fourth Amendment principles that this Court set out in its preliminary injunction ruling.  *See* Linsley Decl. ¶¶ 23–26.  The Supreme Court ultimately quashed that portion of the subpoena, finding that it was "overbroad, burdensome, and oppressive," and "tantamount to the type of impermissible fishing expedition that this Court is tasked to prevent."  Linsley Decl. Ex. G at 15.  The Court enforced the subpoena to the extent that it sought records relating to specific property listings, for which the City had identified a suspicion of illegality, *see id.* at 12–13, and HomeAway produced

In granting the motion for a preliminary injunction, the Court instructed that the case would "proceed expeditiously to discovery." *See* Dkt. 62 at 51. Despite "agree[ing] to expedite discovery as quickly as possible," Oct. 5, 2018 Hr'g Tr. at 8:14–15, the City pursued broad and aggressive discovery from the outset, serving 15 interrogatories and 27 document requests—nearly four times as many HomeAway and Airbnb *combined*—as well as 30 requests for admission. Discovery was contentious, with more than a dozen letters exchanged between the City and HomeAway. *See* Linsley Decl. ¶ 10. The City raised numerous disputes with the Court, several of which were resolved in HomeAway's favor. *See* Dkts. 79, 80, 81, 88, 90, 91.

On October 10, 2019, the Court held a hearing regarding the parties' anticipated motions for summary judgment. The Court repeatedly questioned why the City had continued to litigate so vigorously following its preliminary injunction ruling, rather than pursue other regulatory alternatives. For example, the Court advised the City that it "never imagined we would get to this state because [it] assumed the mayor of the City of New York and City Council have read the Fourth Amendment and read the decision and were actually interested in regulating as opposed to continuing to litigate this particular ordinance." Linsley Decl. Ex. B at 12:24–13:4 ("Oct. 10, 2019 Hr'g Tr."). The Court went on to question why the City was "doggedly doubling down on this ordinance rather than using some other tools in its tool box," *id.* at 13:21–23, and suggested that the City consider "thinking about other approaches" that do not, based upon the preliminary injunction decision, "so significantly entangle [the City] in a Fourth Amendment problem," *id.* at 16:20–24. The City noted its disagreement with the preliminary injunction decision, but ultimately

---

those records (which it had previously offered to do). Even that result did not satisfy the City, which has both appealed the Supreme Court's decision and filed a motion to reargue and renew, which HomeAway has been forced to oppose, again at additional expense. *See* Linsley Decl. ¶ 25. These fees and expenses are not included in the instant application. *See id.* ¶ 26.

responded that, in light of its review of the Court's decision, it was "considering whether there should be regulatory changes." *Id.* at 14:24–15:1.

The parties then prepared for summary judgment. On December 18, 2019, the parties submitted a joint statement of undisputed facts, *see* Dkt. 113, and HomeAway began drafting a merits brief addressing the issues this case presented, *see* Linsley Decl. ¶ 10. On February 13, 2020—one day before the City's opening summary judgment brief was due, *see* Dkt. 117—the City moved to stay the case to provide an opportunity "to explore a settlement that could render remaining claims moot," Dkt. 118.

On July 7, 2020, the City amended the relevant provisions of the Administrative Code, narrowing the provisions that the Court found likely to violate the Fourth Amendment. *See* Local Law No. 2020/64 (amending Admin. Code §§ 26-2101, 26-2102, 26-2104) (Linsley Decl. Ex. C). Among other things, these amendments:

- Narrowed the application of the Ordinance to "qualifying listings"—rather than *all* listings—defined as those that offer or appear to offer a (1) rental of "an entire dwelling unit or housing accommodation" or (2) "rental for three or more individuals at the same time." *Id.* § 1 (amending Admin. Code § 26-2101).[3]

- Eliminated reporting requirements for listings that are rented for fewer than five days in a reporting period. *See id.* § 2 (amending Admin. Code § 26-2102).

- Eliminated required reporting of the total amount of fees received by a booking service for reported listings. *See id.*

- Reduced the frequency of reporting from monthly (12 reports) to quarterly reports (four reports). *See id.*

---

[3] *See also* Linsley Decl. Ex. D (Testimony from Executive Director of Office of Special Enforcement in support of amendments: "Instead of all transactions for all listings, the report would include all transactions for listings that generate five or more nights of bookings per quarter, so long as the listing offers or appears to offer an entire housing unit or allows three or more guests to stay at one time.").

In its letter to the Court requesting dismissal of HomeAway's lawsuit as moot, the City agrees that the amended ordinance is "substantially different" from the initial version. Dkt. 129 at 2. The City notes that "Local Law 64 amended [the Ordinance's] reporting requirement so as to no longer require the submission of a report of *every* reportable short-term rental transaction in the City of New York," and that "[i]nstead, booking services are now required—with a couple of exceptions—to 'periodically submit … a report of transactions *associated with a qualifying listing.*'" *Id.* (footnotes and citation omitted) (emphasis in original). The amended ordinance requires that platforms report short-term rental transactions associated with "qualifying listings" (or what the City calls "facially illegal listings") that had five or more bookings per quarter— whereas the original Ordinance required platforms "to submit to the City a report of *all* short-term rental transactions for which the [platform] charged, collected, or received a fee." *Id.* at 1–2 (emphasis added).

Those amendments were a result of this lawsuit. In supporting the amendments, the Executive Director of the Office of Special Enforcement ("OSE") explained that the Ordinance had "faced a legal challenge from two booking services that would have been subject to the requirements, namely Airbnb and HomeAway"; that a "preliminary injunction was issued in that matter"; and that "the passage of [the amendments] will result in Airbnb dismissing its suit."[4] Linsley Decl. Ex. D at 2.

HomeAway now moves for an award of $1,471,883.20 in attorney's fees. *See* Linsley Decl. ¶ 5 & Ex. A. These figures reflect counsel's hours and discounted rates charged to Expedia, HomeAway's parent company. *See* Linsley Decl. ¶ 3. HomeAway further requests $30,467.50 in

---

[4] On the basis of these amendments, Airbnb settled its case against the City and stipulated to dismissing its action on July 14, 2020. *See* No. 18 Civ. 7712, Dkts. 157, 161.

costs, including expenses related to legal research, travel, court reporters, document productions, and printing, incurred in connection with this action. *Id.* ¶ 6. The requested rates, hours, and costs are summarized in the accompanying declaration of Kristin A. Linsley. *See* Linsley Decl. Ex. A.

## LEGAL STANDARD

The Civil Rights Attorneys' Fees Award Act is intended to "ensure effective access to the judicial process for persons with civil rights grievances." *Hensley v. Eckelhart*, 461 U.S. 424, 429 (1983) (internal quotation marks omitted). To that end, 42 U.S.C. § 1988(b) "authorizes federal district courts, in their discretion, to 'allow the prevailing party … a reasonable attorney's fee as part of the costs.'" *Sole v. Wyner*, 551 U.S. 74, 77 (2007) (quoting 42 U.S.C. § 1988(b)). A plaintiff "prevails" for purposes of Section 1988 if he or she "succeed[s] on any significant issue in ligation which achieved some of the benefit the [plaintiff] sought in bringing the suit." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 758 (2d Cir. 1998) (alteration and citation omitted). A plaintiff "may be a 'prevailing party' without having obtained a favorable final judgment following a full trial on the merits." *Hanrahan v. Hampton*, 446 U.S. 754, 756–57 (1980) (per curiam) (quotation marks omitted). Although courts have discretion in deciding whether to award fees, "this discretion is narrowed by a presumption that successful civil rights litigants should ordinarily recover attorneys' fees." *Raishevich v. Foster*, 247 F.3d 337, 344 (2d Cir. 2001).[5]

---

[5] As relevant here, a "determination of mootness neither precludes nor is precluded by an award of attorneys' fees." *Haley v. Pataki*, 106 F.3d 478, 483–84 (2d Cir. 1997) (citation omitted).

**ARGUMENT**

**I.   The Court Should Grant HomeAway's Request for Reasonable Attorney's Fees**

HomeAway prevailed in this litigation by obtaining a preliminary injunction that prevented the Ordinance from going into effect and resulted in its replacement with a narrower Ordinance. HomeAway's requested attorney's fees are reasonable and should be awarded.

**A.   HomeAway Is A "Prevailing Party"**

"To qualify as a prevailing party, a plaintiff must obtain at least some relief on the merits of his claim." *Chabad Lubavitch of Litchfield Cty., Inc. v. Litchfield Historic Dist. Comm'n*, 934 F.3d 238, 243 (2d Cir. 2019) (citation omitted). "When a party receives a stay or preliminary injunction but never obtains a final judgment, attorney's fees are proper if the court's action in granting the preliminary injunction is governed by its assessment of the merits." *Haley v. Pataki*, 106 F.3d 478, 483 (2d Cir. 1997).

As courts across the country have held, a plaintiff qualifies as a "prevailing party" under Section 1988 when it obtains a preliminary injunction against enforcement of a law that is subsequently amended or repealed. In *Dearmore v. City of Garland*, 519 F.3d 517 (5th Cir. 2008), for example, the Fifth Circuit held that a plaintiff who had been awarded a preliminary injunction challenging a municipal housing code provision was a "prevailing party," where "[i]n response to the district court's grant of this preliminary injunction, the City amended the offending provision of the Ordinance." *Id.* at 524. Similarly, in *Veasey v. Wilkins*, 158 F. Supp. 3d 466 (E.D.N.C. 2016), the court deemed the plaintiff a prevailing party where she had persuaded the court to issue a preliminary injunction against a North Carolina firearms statute, the injunction "prevent[ed] defendants from infringing on [the plaintiff's] constitutional rights by enforcing an unconstitutional law," and the state then amended the law and the action was dismissed as moot. *Id.* at 468–70; *see also, e.g., Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1356 (11th Cir.

2009) (NAACP "prevailed" by obtaining a preliminary injunction against a Georgia voter identification law, where the injunction "prevented Georgia from enforcing the requirement of photo identification" and the state thereafter repealed the enjoined law); *accord Rogers Grp., Inc. v. City of Fayetteville*, 683 F.3d 903, 910–11 (8th Cir. 2012); *People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 230, 233–34 (3d Cir. 2008); *Planned Parenthood Minnesota v. Daugaard*, 946 F. Supp. 2d 913, 919–21 (D.S.D. 2013) (organization "prevailed" when it obtained preliminary injunction against South Dakota statutes governing abortion access and legislature then amended enjoined portions of the statute).

Likewise here, HomeAway is a prevailing party. HomeAway filed this action seeking to enjoin the City from enforcing the Ordinance. *See* Compl. (Dkt. 1). The Court's award of a preliminary injunction was based on the merits: the Court found it "likely that Airbnb and HomeAway will succeed in invalidating the Ordinance as unreasonable under the Fourth Amendment." Dkt. 62 at 41; *see also id.* at 16 n.5 ("[T]he Court concludes that plaintiffs are likely to prevail on their Fourth Amendment challenge[.]"). The Court devoted 26 pages of its opinion to the merits of the Fourth Amendment claim, *see id.* at 16–41, addressing the remaining preliminary injunction factors only briefly, *see id.* at 46–51. Because "the Court's action in granting the preliminary injunction [was] governed by its assessment of the merits," *Haley*, 106 F.3d at 483 (citation omitted), the preliminary injunction confers prevailing party status upon HomeAway.

The City amended the Ordinance in response to that decision, citing the "preliminary injunction [that] was issued in th[is] matter" as the basis for the amendments. Linsley Decl. Ex. D at 2. The amendments address the provisions of the Ordinance that this Court found likely to violate the Fourth Amendment—in particular, by narrowing the listings subject to reporting

requirements to those that offer or appear to offer entire units for rent or allow three or more guests

at the same time.  *See* Local Law No. 64 §§ 1–3 (amending Admin. Code §§ 26-2101, 26-2102,

26-2104).[6]

The City's amendments to the Ordinance inured to the public benefit, ensuring that the City

could not enforce an Ordinance with such "breathtaking" scope as the one HomeAway challenged

here.  Dkt. 62 at 33.  Instead, with its amendments, the City seeks business records pertaining to a

"tailored" set of listings.  *Compare, e.g.*, Dkt. 62 at 36 (noting that Ordinance was "unsupported

by individualized suspicion or any tailored justification"), *with* Tr. of Minutes of City Council

Stated Meeting at 14:22–23 (June 25, 2020) (Linsley Decl. Ex. E) ("These amendments would

tailor those reporting requirements[.]").  These amendments are important not only for HomeAway

and Airbnb, and their users, but also for other hosting platforms.  And the principles established

through the Court's preliminary injunction ruling also will prevent the City from imposing

similarly sweeping data-disclosure laws on other industries.  Indeed, this Court identified precisely

that risk—explaining that, if this Ordinance were enforced, nothing would stop regulators from

requiring, for example, all online auction services (*e.g.*, eBay) to produce monthly records of all

sales, or medical providers to produce monthly records of all patient records.  *See* Dkt. 62 at 40–

41.[7]  Through this litigation and the Court's ruling, HomeAway has helped prevent those troubling

---

[6]  *See also* Linsley Decl. Ex. D at 2 (OSE Testimony:  "Instead of all transactions for all listings, the report would include all transactions for listings that generate five or more nights of bookings per quarter, so long as the listing offers or appears to offer an entire housing unit or allows three or more guests to stay at one time."); Tr. of Minutes of City Council Stated Meeting at 14:22–15:2 (June 25, 2020) (Linsley Decl. Ex. E) (Statement of Corey D. Johnson, City Council Speaker) ("These amendments would tailor those reporting requirements [of the Ordinance] to cover listings for short-term rentals on the entire dwelling unit or housing accommodation and rentals for three or more persons at the same time[.]").

[7]  The Court explained:  "[T]he implications of upholding the Ordinance give pause, as just a few hypotheticals illustrate.  By the City's logic, a City Council presumably could also compel (1) all

scenarios of regulatory overreach "and the potential far-reaching implications of the City's position" from becoming a reality. *Id.* at 41.

The preliminary injunction "blocked the City from enforcing the [O]rdinance—which the City had planned to do," based on this Court's "conclusion that [HomeAway] [was] likely to prevail on the merits." *Rogers*, 683 F.3d at 910 (second alteration in original) (emphasis and citation omitted). This Court's "merits-based preliminary injunction" effected "a material alteration in the legal relationship between the parties" and thus rendered HomeAway a "prevailing party." *Dearmore*, 519 F.3d at 526; *see also Veasey*, 158 F. Supp. 3d at 470 (in obtaining injunction against later-amended law, plaintiffs had "prevent[ed] defendants from infringing on [her] constitutional rights by enforcing an unconstitutional law"). And because HomeAway "obtain[ed] an injunction that carries a systematic effect of importance or serves a substantial public interest, a substantial fee award" is justified. *LeBlanc-Sternberg*, 143 F.3d at 760 (internal quotation marks omitted). As a "successful civil rights litigant[]," HomeAway should, as in the "ordinar[y]" course, "recover attorneys' fees." *Raishevich*, 247 F.3d at 344; *see also, e.g.*, *Smith v. Robinson*, 468 U.S. 992, 1006 (1984) (prevailing party "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust" (quoting S. Rep. No. 94-1011, at 4 (1976))).[8]

---

online auction services monthly to produce all records of sales by New York City residents, on the premise that such records could assist in finding sellers who evaded capital gain taxes on sales of collectibles; (2) all medical providers monthly to produce all patient records for care rendered in New York City, on the premise that such records could assist in finding instances in which users engaged in up-coding and other health-care fraud; and (3) all credit card companies monthly to produce all records of expenditures in New York restaurants, on the premise that such records could assist in identifying instances in which commercial income was not reported to tax authorities." Dkt. 62 at 40–41.

[8]  In granting HomeAway's motion for a preliminary injunction, the Court stated that it was "not prepared" to find HomeAway likely to succeed on the merits of its Stored Communications Act

### B.        The Requested Fees Amount Are Reasonable

"Once a district court determines that a party has prevailed, it must calculate what constitutes a reasonable attorney's fee." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992).  A "presumptively reasonable fee" is calculated by the "lodestar" method.  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183, 189–90 (2d Cir. 2008).  The lodestar figure is "arrived at by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate."  *Leblanc-Sternberg*, 143 F.3d at 763–64 (alteration and citation omitted).  There is a "strong presumption that the lodestar represents the reasonable fee." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (internal quotation marks omitted).

Here, the hours and rates used to calculate HomeAway's fees request are reasonable in light of the novelty of the issues, the needs of the litigation, and the success achieved.

### 1.        The Hours Expended Were Reasonable

The reasonableness of the hours an attorney expends depends on "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant*, 973 F.2d at 99.  Hours expended "should generally be documented by contemporaneously created time records that specify for each attorney[] the date, the hours expended, and the nature of the work done."  *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998).  As documented in HomeAway's time records, *see* Linsley Decl. Ex. A, the hours HomeAway's counsel expended in this case were reasonable.

---

claim, Dkt. 62 at 41, and that it was "not necessary" to reach HomeAway's First Amendment claim, *id.* at 46.  Those determinations do not change HomeAway's status as "prevailing party," as the Supreme Court has "made it clear that fees could and should be awarded under § 1988 in cases where plaintiffs prevail on some but not all claims."  *Balark v. City of Chicago*, 81 F.3d 658, 664 (7th Cir. 1996) (citing *Hensley*, 461 U.S. 424).

***Pre-Suit Efforts***.  Counsel's pre-suit efforts on behalf of HomeAway included analyzing the Ordinance provisions at issue, researching the law, developing potential claims and arguments, and considering alternatives to a lawsuit.  *See* Linsley Decl. Ex. A.  HomeAway's counsel began analyzing the Ordinance on June 7, 2018—the day after it was first proposed to City Council.  *See id.*  Over the next two months, as City Council considered the proposed legislation, HomeAway developed its case—preparing to file what become a 28-page, 93-paragraph complaint, once the legislation was enacted.  *See id.*; Dkt. 1.  All of this time went toward "advanc[ing] the federal claims subsequently asserted" and is thus compensable.  *Davis v. City of New York*, 2011 WL 4946243, at *5 (S.D.N.Y. Oct. 18, 2011).

***Preliminary Injunction***.  Briefing and argument on HomeAway's motion for a preliminary injunction was comprehensive.  As this Court has recognized, the issues presented in this litigation were complex—requiring a close analysis of the Supreme Court's Fourth Amendment jurisprudence and applying that jurisprudence to short-term rental services like HomeAway's.  In light of these complexities, HomeAway's counsel thoroughly researched the law and facts, ultimately filing a 25-page brief and a 10-page supporting declaration with 35 pages of exhibits.  *See* Dkts. 10, 11.  The City responded with a 35-page brief, accompanied by 429 pages of declarations and exhibits.  *See* Dkts. 19, 20, 21.  HomeAway analyzed the City's extensive submissions in preparing its reply brief, *see* Dkt. 31, then prepared for a comprehensive hearing held on October 5, 2018, *see* Oct. 5, 2018 Hr'g Tr.  On January 3, 2019, the Court granted Plaintiffs' motion for a preliminary injunction, stating that the case would "proceed expeditiously to discovery."  *See* Dkt. 62 at 1, 51.[9]

---

[9]  At the October 2018 hearing, the Court said that discovery should "proceed guided by the Court's … decision on the motion for preliminary injunction."  Oct. 5, 2018 Hr'g Tr. at 6–7.  In

*Discovery*.   Consistent with the Court's directive to conduct "expeditious[]" discovery, Dkt. 62 at 51, HomeAway set about preparing targeted discovery requests.  Two weeks after the Court's order, HomeAway and Airbnb *jointly* served four interrogatories and seven document requests.  *See* Linsley Decl. ¶ 10.  For its part, the City served 15 interrogatories, 27 document requests, and 30 requests for admission on HomeAway alone—initiating what was to become a needlessly extenuated discovery process.  *See id*.  Throughout the first half of 2019, HomeAway devoted significant time and energy to responding to the City's requests, ultimately making eight document productions and serving several written responses.  *See id.*  The parties then engaged in Rule 30(b)(6) depositions, including depositions of HomeAway's representative and three City representatives (with responsibilities divided between HomeAway and Airbnb counsel).  *See id.* The City's 30(b)(6) deposition notice to HomeAway identified 30 separate topics and subtopics that the City required HomeAway's representative to address.  *See id.*; *see generally Ortiz De Arroyo v. Barcelo*, 765 F.2d 275, 282 (1st Cir. 1985) (affirming fee award to challengers of land use policy that was altered during litigation, where "[n]umerous requests for discovery were exchanged and defended").

As the Court is aware, the discovery process was contentious.  On two occasions, the City presented discovery disputes with HomeAway to the Court.  *See* Dkt. 79 (Rule 30(b)(6) deposition topics); Dkt. 88 (document production and witness preparation).  HomeAway was required to prepare responses, *see* Dkts. 80, 90, and the Court ultimately rejected many of the City's requests, including its request to take a further 30(b)(6) deposition after the discovery cut-off date, *see* Dkts. 81, 91.  Beyond its letters to the Court, the parties engaged in extensive correspondence related to

---

granting Plaintiffs' motion for a preliminary injunction, the Court noted potential areas for discovery.  *See, e.g.*, Dkt. 62 at 27 n.9 ("[t]he accessibility to municipal prosecutors and criminal investigators of the materials produced pursuant to the Ordinance").

discovery disputes—resulting in more than a dozen letters exchanged between the parties.  *See*
Linsley Decl. ¶ 10.  HomeAway successfully resolved many of these discovery disputes, and its
efforts to do so required, in each case, a review of the factual record and applicable legal standards.
*See, e.g.*, *Ross v. Saltmarsh*, 521 F. Supp. 753, 766 (S.D.N.Y. 1981) (requested fees reasonable
where "defendants vigorously opposed all of plaintiffs' discovery motions, raising several legal
points in their numerous objections which plaintiffs undertook to brief thoroughly"), *aff'd*, 688
F.2d 816 (2d Cir. 1982); *see generally Bailey v. Pataki*, 2016 WL 3545941, at *4 (S.D.N.Y. June
16, 2016) ("In light of their adversaries' substantial efforts, plaintiffs' intense preparation and large
team were necessary.").[10]

*Summary Judgment*.  Following discovery, HomeAway prepared for summary judgment.
HomeAway submitted pre-motion letters setting forth its arguments and its responses to the City's
arguments.  *See* Dkts. 86, 92.  At the Court's instruction, HomeAway then participated in the
preparation of a joint statement of undisputed facts.  The parties' joint statement was detailed and
extensive—requiring three extensions of time to complete, *see* Dkts. 103, 107, 111, and ultimately
spanning 220 pages and including 686 paragraphs, *see* Dkt. 113.  The preparation of this document
involved an intensive review of the facts developed in this litigation, as well as extensive
correspondence and discussions among the parties.  The Court ordered that the City file its
summary judgement motion first, and under the Court's guidance, and HomeAway began drafting
its merits brief while awaiting the City's opening brief.  *See* Oct. 10, 2019 Hr'g Tr. at 48:20–25

---

[10]  HomeAway is entitled to attorney's fees for counsel's work opposing the City's discovery-related motions, even if some of the City's motions were granted.  *See, e.g.*, *Luessenhop v. Clinton Cty.*, 558 F. Supp. 2d 247, 256 (N.D.N.Y. 2008) (explaining that a "prevailing party is not limited to recovery on successful motions alone," but rather "unsuccessful motions too are compensable as long as they are not frivolous"), *aff'd*, 324 F. App'x 125 (2d Cir. 2009); *see also Gonzales v. Scanlinatella*, 112 F. Supp. 3d 5, 17–18 (S.D.N.Y. 2013).

("You can probably write your brief long before your trial and long before the city's brief to the extent it is covered in your affirmative case."). The City requested and received a stay of the litigation, just one day before its opening brief was due. The brief ultimately was never filed as the City moved forward with its amendments to the Ordinance. *See* Dkts. 117, 119; *see also, e.g.*, *Pastre v. Weber*, 800 F. Supp. 1120, 1126 (S.D.N.Y. 1991) (finding that "the time expended in connection with the summary judgment motion was fully warranted," where "[t]he motion was complex and aggressively pursued").

  ***Application for Attorney's Fees and Costs***. Finally, after the City amended the Ordinance, counsel prepared this application for attorney's fees and costs, and HomeAway is entitled to reimbursement for counsel's time spent doing so. *See, e.g.*, *Hines v. City of Albany*, 862 F.3d 215, 223 (2d Cir. 2017) ("Prevailing parties under Section 1988 are … entitled to recover a reasonable fee for preparing and defending a fee application."); *Knoeffler v. Town of Mamakating*, 126 F. Supp. 2d 305, 316 (S.D.N.Y. 2000) ("It is well-settled law that a prevailing party is entitled to reimbursement for the time expended in the preparation of the fee application.").

  Had the City followed the direction set out in this Court's preliminary injunction decision, which so clearly detailed the constitutional infirmities of the Ordinance, and turned its attention to possible amendments, the subsequent—and significant—expense for discovery, discovery disputes, and preparation for summary judgment proceedings could have been avoided. Instead, only after more than a year and approximately $1 million in attorney's fees were expended by HomeAway alone, and shortly before the City would face the Court on summary judgment, did the City start the process of amending its ordinance.

  In addition, all of this took place against the backdrop of litigating complex issues of constitutional law, with aggressive opposition by the City at every step. The case presented novel

questions in the shifting landscape of Fourth Amendment law, including the reach of recent Supreme Court decisions, such as *City of Los Angeles v. Patel*, 576 U.S. 409 (2015) and *Carpenter v. United States*, 138 S. Ct. 2206 (2018).  And the challenged Ordinance was unique:  HomeAway worked without a template and without the benefit of judicial precedent considering an analogous statute.  Under these circumstances, HomeAway's time spent developing the factual record and crafting legal arguments was reasonable.  *See, e.g.*, *Doe v. Bridgeport Police Dep't*, 468 F. Supp. 2d 333, 339 (D. Conn. 2006) (awarding fees where "the question addressed is of first impression and difficult, and the skill and ability of plaintiffs' attorneys in this area is strong").

Finally, the fees requested by HomeAway are even more reasonable because counsel collaborated with Airbnb to prosecute this case.  Throughout the litigation, HomeAway coordinated its efforts with counsel for Airbnb, thus avoiding unnecessary duplication.  If HomeAway had brought this case on its own, it is likely that its attorney's fees would have been substantially higher.  Despite this collaboration and coordination, the litigation required significant, independent work by counsel for both companies.  For example, both plaintiffs had to respond independently to the City's voluminous discovery requests, prepare their own witnesses for deposition, and draft statements of undisputed facts regarding their respective platforms.  And due in part to the differing nature of their platforms, each company prepared its own merits briefs in support of the motions for preliminary injunction and for summary judgment.  In this context, counsel's hours devoted to this litigation are fully warranted and compensable.  *See, e.g.*, *Tidwell v. Schweiker*, 677 F.2d 560, 569–70 (7th Cir. 1982) (co-plaintiffs' requested fees were not "duplicative" in "bill[ing] for briefs on the same issue and … the same court appearance," where the "suit involved two sets of plaintiffs," which "were still separate and distinct").

### 2.      The Hourly Rates Are Reasonable

A reasonable hourly rate is "what a reasonable, paying client would be willing to pay." *Bergerson v. New York State Office of Mental Health, Cent. New York Psychiatric Ctr.*, 652 F.3d 277, 289–90 (2d Cir. 2011) (citation omitted).  It "should be based on market rates 'in line with those rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"  *Reiter v. MTA New York City Transit Auth.*, 457 F.3d 224, 232 (2d Cir. 2006) (alteration omitted) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)).  The "prevailing community a district court should consider … is normally the district in which the court sits."  *Id.* (internal quotation marks omitted).  Courts should consider factors such as "the novelty and difficulty of the questions," the "results obtained," and the "experience, reputation, and ability of the attorneys."  *Arbor Hill*, 522 F.3d at 186 n.3, 190.

The complexities of this case, and what proved to be an aggressive defense by the City, called for the expertise and resources of a sophisticated firm such as Gibson Dunn.  *See, e.g.*, *LV v. N.Y. City Dep't of Educ.*, 700 F. Supp. 2d 510, 517 (S.D.N.Y. 2010) ("Complex cases may require more resources and different skills than civil rights lawyers working in solo practice, small firms, or non-profit organizations can feasibly supply.").

HomeAway selected an experienced team of attorneys to litigate this matter.  *See* Linsley Decl. ¶¶ 12–18.  Lead attorney Kristin Linsley has extensive experience in complex business and appellate litigation and has been recognized as a top legal practitioner in the United States.  *Id.* ¶ 13.  Ms. Linsley graduated *magna cum laude* from Harvard Law School and served as a law clerk on the D.C. Circuit and the U.S. Supreme Court.  *Id.*  Mylan Denerstein is Co-Chair of Gibson Dunn's Public Policy Practice Group and has years of experience in litigation related to New York State and City regulations.  *Id.* ¶ 14.  Before joining Gibson Dunn, Ms. Denerstein served as Deputy Chief of the Criminal Division for the Southern District of New York and as Counsel to

New York State Governor Andrew Cuomo, where she acted as the Governor's chief counsel and principal legal advisor. *Id.* Mr. Dick has significant litigation experience with a focus on constitutional challenges to state and municipal regulations. *Id.* ¶ 15. Associates on the team had significant clerkship experience, including on the Supreme Court, the Ninth Circuit, and the Southern District of New York, and experience challenging government actions. *Id.* ¶¶ 16–17. And as noted, Gibson Dunn discounted its customary rates for this matter. *Id.* ¶ 3.

In light of counsel's experience and credentials, HomeAway's rates of $250 to $1,285 are consistent with the market rate of firms of "reasonably comparable skill, experience, and reputation" in the Southern District of New York, including as recognized in recent fee awards. *Reiter*, 457 F.3d at 232 (citation omitted); *see, e.g.*, D.C. Weiss, *At Least 3 BigLaw Firms Charge More than $1K Per Hour for Top Associates*, ABA Journal (May 27, 2020) (noting associate rates of greater than $1,000 per hour at leading New York firms); S. Stokes, *Associate Hourly Billing Rates Surge Past $1K as Firms Snap Up Bankruptcy Work*, American Lawyer (May 22, 2020) (noting multiple firms raising rates for associates to over $1,000 per hour, including one leading New York firm charging pre-COVID 19 rates of $1,600 for partners and $995 for associates); J.F. McCarrick, *Decade-High BigLaw Billing Rate Growth in 2019: Are D&O Insurers Paying More in Claims Defense for the Same or Worse Results?*, White & Williams LLP (Feb. 24, 2020) (noting that partner rates at large law firms "are expected to regularly cross the $2,000 an hour threshold for the first time" and associate rates "also skyrocketed—and now routinely exceed $1,000 an hour"); *see also Mahan v. Roc National, LLC*, 2016 WL 4718018, at *2 (S.D.N.Y. Sept. 9, 2016) (approving partner rates of $747–$858 and associate rate of $553); *Union of Orthodox Jewish Congregations of Am. v. Royal Food Distribs. LLC*, 665 F. Supp. 2d 434, 437 (S.D.N.Y. 2009) (approving partner and associate rates of $735 and $445, respectively, in 2009).

The requested rates are supported by "the novelty and difficulty of the questions," the "results obtained," and the "experience, reputation, and ability of the attorneys." *Arbor Hill*, 522 F.3d at 186 n.3.  As the Court has recognized, the issues presented in this case are both complex and important, *see* Oct. 5, 2018 Hr'g Tr. at 5:8, making HomeAway's success in achieving the relief sought all the more notable.[11]

That the Court found HomeAway likely to succeed on a *facial* constitutional claim is also significant, both because facial challenges "are the most difficult to mount successfully," *Patel*, 576 U.S. at 415 (alteration and citation omitted), and because a facial victory secures Fourth Amendment protection against these unconstitutional provisions for all affected companies in New York—as has now happened through the passage of an amended Ordinance, applicable to all market participants, that addresses the constitutional problems the Court identified, *see Morris v. Eversley*, 343 F. Supp. 2d 234, 248 (S.D.N.Y. 2004) (Chin, J.) (noting "significant victory, one that undoubtedly will help to protect the civil rights of others"); *see also Hensley*, 461 U.S. at 435 ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensable fee.").

## II.     The Court Should Grant HomeAway's Request for Reasonable Costs

"An award of costs under section 1988 'normally includes those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients.'" *Finch v. New York State Office of Children & Family Servs.*, 861 F. Supp. 2d 145, 157 (S.D.N.Y. 2012)

---

[11] The Court's Fourth Amendment ruling has been adopted, in relevant part, by at least one other federal court reviewing a similar short-term rental law, *see, e.g.*, *Airbnb, Inc. v. City of Boston*, 386 F. Supp. 3d 113, 125 (D. Mass. 2019), *appeal dismissed*, No. 19-1561, 2019 WL 6522166 (1st Cir. Sept. 3, 2019), and has informed many other jurisdictions considering such laws.  It also has been cited in academic literature.  *See, e.g.*, Rory Van Loo, *The Missing Regulatory State: Monitoring Businesses in an Age of Surveillance*, 72 Vand. L. Rev. 1563, 1584–85 (2019); Allyson E. Gold, *Community Consequences of Airbnb*, 94 Wash. L. Rev. 1577, 1627 (2019).

(alteration omitted) (quoting *Reichman v. Bonsignore, Brignati & Mazzota P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)).  Recoverable disbursements include items such as "photocopying, postage, covers, exhibits, typing, transportation," *Kuzma v. IRS*, 821 F.2d 930, 933 (2d Cir. 1987), and Westlaw research, *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 369 F.3d 91, 98 (2d Cir. 2004) (per curiam).

Here, HomeAway requests expenses incurred for legal research, travel, court reporters, document productions, and printing, which total $30,467.50 over the course of the litigation.  *See* Linsley Decl. ¶ 6.  These costs are reasonable and should be awarded on this motion.

## CONCLUSION

For the foregoing reasons, the Court should grant HomeAway's motion and award attorney's fees and costs in the amount of $1,502,350.70.

Dated:   San Francisco, California
         October 9, 2020

GIBSON, DUNN & CRUTCHER LLP


By: */s/ Kristin A. Linsley*
Kristin A. Linsley
Joshua D. Dick (*pro hac vice*)
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
(415) 393-8395
KLinsley@gibsondunn.com
JDick@gibsondunn.com

Mylan L. Denerstein
Patrick J. Hayden
200 Park Avenue, Floor 47
New York, NY 10166-0193
(212) 351-3850
MDenerstein@gibsondunn.com

*Attorneys for Plaintiff HomeAway.com, Inc.*