UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HOMEAWAY.COM, INC.,

                                             Plaintiff,                          18 Civ. 7742 (PAE)

                    -v-                                                          OPINION &
                                                                                 ORDER
CITY OF NEW YORK,

                                             Defendant.

---

PAUL A. ENGELMAYER, District Judge:

        This decision resolves an application by HomeAway.com, Inc. ("HomeAway") for

attorneys' fees and costs under the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C.

§ 1988.  In parallel lawsuits filed in August 2018, home-sharing platforms HomeAway and

Airbnb, Inc. ("Airbnb") sued New York City (the "City").  They challenged a City Ordinance

obliging such platforms to produce to a city enforcement agency capacious data every month as

to all their local users.  In January 2019, they obtained a preliminary injunction, which enjoined

the Ordinance as likely violating the Fourth Amendment.  The Ordinance never took effect.

After well over a year of continued litigation and during the summary judgment briefing process,

the City adopted a new, and substantially different, ordinance, mooting the plaintiffs' challenge.

        For the reasons that follow, the Court agrees that HomeAway is a prevailing party in this

important litigation addressing a Fourth Amendment question of first impression, and is entitled

to a substantial award of fees and costs.  The Court awards HomeAway $595,009.69.

I.      **Background**

A.      **The Underlying Litigation**

A history of this litigation, reflecting events through January 3, 2019, is set out in the Court's decision that day granting preliminary relief.  *See Airbnb, Inc. v. City of New York*, 373 F. Supp. 3d 467 (S.D.N.Y. 2019) ("*PI Decision*").  The ensuing history is reflected in the briefs and other submissions on HomeAway's fee application.  *See, e.g.*, Dkt. 132 ("HomeAway Mem."); Dkt. 142 ("NYC Opp'n"); Dkt. 148 ("HomeAway Reply").[1]  The Court here recaps only the history necessary to give context to the fee application.

On July 18, 2018, the New York City Council approved, and on August 6, 2018, the Mayor signed, Local Law 146, N.Y.C. Admin. Code §§ 26-2101 to 2104 ("Local Law 146" or the "Ordinance").  Local Law 146 was an attempt to facilitate enforcement of "multiple-dwelling" laws prohibiting the short-term rentals of entire apartments in residential buildings.  *See* N.Y. Mult. Dwell. Law § 4(8) (state law prohibiting rental of most apartments for fewer than 30 days in "Class A" multiple dwellings—*i.e.*, those occupied for permanent-residence purposes by three or more families living independently—unless a permanent resident remains on the premises); N.Y.C. Admin. Code §§ 28-210.3, 28-118.3.2, 27-2004, 27-265; N.Y.C Building Code §§ 310.1.2, 310.2 (city law prohibiting short-term rentals of entire multiple-dwelling units and one- and two-family units occupied for permanent residence purposes).  Such short-term rentals, the City has contended, promote overcrowding and improper sanitation, reduce the availability of permanent housing, drive up rents, and harm the character of residential neighborhoods.  The validity of these laws was not at issue in this litigation.

---

[1] Unless otherwise specified, docket citations refer to 18 Civ. 7742, *HomeAway.com, Inc. v. City of New York*.  Citations to the consolidated action brought by Airbnb—18 Civ. 7712, *Airbnb, Inc. v. City of New York*—are identified as such.

Local Law 146 aimed to facilitate the City's enforcement of these laws by requiring entities like Airbnb and HomeAway, which provide short-term rental platforms (termed "booking services" by the Ordinance), to provide the City with large volumes of customer data each month.  City regulators and prosecutors could then draw upon those data to build cases against property owners or hosts.  The "monthly transaction reports" that Local Law 146 required each booking service to produce were to include, for each listing, the owner's name, address, phone number, and email; the details of each booking transaction, including its duration, the fees earned, and how it was advertised; specific information about how the owners used and rented their properties; and personal bank-account and payment information of the property owner.  The Ordinance required booking services to produce such information whether or not there was reason to suspect that the listing, or host, was violating the law.

Under the Ordinance, a platform's monthly reports were to be produced to the Mayor's Office of Special Enforcement ("OSE"), charged with enforcing quality-of-life laws, including the multiple-dwelling laws.  OSE coordinates joint investigations with city agencies, including criminal law enforcement agencies.  Under the Ordinance, booking services faced civil penalties for noncompliant monthly reports.  These penalties were the greater of (1) $1,500 for each listing that was "missing, incomplete, or inaccurate"; or (2) the total fees collected by the booking service during the preceding year in connection with that listing.  The Ordinance was scheduled to take effect February 2, 2019.

On August 24, 2018, Airbnb brought suit, seeking to enjoin enforcement of the Ordinance.  It argued that the Ordinance facially violated the Fourth and First Amendments of the U.S. Constitution and conflicted with, and was therefore preempted by, the Stored Communications Act, 18 U.S.C. § 2701 *et seq.* ("SCA").  *See* 18 Civ. 7712, Dkt. 1.  The same

day, HomeAway also sued, making similar claims.  *See* Dkt. 1.  On August 30, 2018, Airbnb

moved to preliminarily enjoin the Ordinance's enforcement.  *See* 18 Civ. 7712, Dkt. 13.  On

September 4, 2018, HomeAway filed its own motion for the same relief.  *See* Dkt. 10.  On

September 11, 2018, the Court consolidated the two cases, and scheduled a hearing for

October 5, 2018 on the pending motions.  Dkt. 15.  On October 2, 2018, after the City had filed

an opposition, both plaintiffs filed reply briefs.

The October 5, 2018 hearing lasted three hours.  It consisted of a detailed examination of

the history and operation of Local Law 146; the City's history of using less invasive enforcement

means (*e.g.*, targeted subpoenas) to enforce the multiple-dwelling laws, including as directed to

Airbnb and HomeAway; the manner in which penalties would be imposed and tabulated under

the Ordinance; and the means, if any, available to booking services to bring pre-compliance

challenges to the monthly reporting obligation.  *See generally* 18 Civ. 7712, Dkt. 80 ("Oct. 5,

2018 Tr.").  At the close of the hearing, the Court solicited letters as to the City's historical use

of subpoenas with respect to the Airbnb and HomeAway platforms.  *Id*. at 121.

 In the *PI Decision*, the Court granted plaintiffs' motions for a preliminary injunction,

finding their Fourth Amendment challenges likely to succeed.  After finding that the Amendment

applied, 373 F. Supp. 3d at 481–86, the Court found two aspects of the Ordinance problematic.

First was the "breathtaking" scale of the data production the Ordinance compelled.  *Id*.

at 490–93.  "Each month, the Ordinance appropriates from every participant in the burgeoning

home-sharing industry what is effectively a wholesale replica of that booking service's database

as to New York City users."  *Id.* at 490.  This production demand was not limited temporally or

at all tailored, and thus was "the antithesis of a targeted administrative subpoena for business

records."  *Id.* at 491.  This, the Court explained, likely violated the Fourth Amendment:

4

> While granting OSE the run of the vast user databases of platforms like Airbnb and
> HomeAway would surely aid OSE in its mission to identify and pursue violators of
> the Multiple Dwelling Laws, no Fourth Amendment precedent countenances this
> expedient.  The City has not cited any decision suggesting that the governmental
> appropriation of private business records on such a scale, unsupported by
> individualized suspicion or any tailored justification, qualifies as a reasonable
> search and seizure.

*Id*. at 492.  *See generally id*. at 490–95.

Second, the Ordinance "fail[ed] to provide a neutral forum in which a booking service

could bring a pre-compliance challenge," as required by *City of Los Angeles v. Patel*,

135 S. Ct. 2443 (2015):

> The Ordinance does not provide for a neutral forum before which a booking service
> could argue, before a monthly production deadline, that the demand for user data
> was unreasonable under the Fourth Amendment (e.g., because of its scale or lack
> of tailoring).  Nor does the Ordinance provide for a neutral forum before which a
> booking service could challenge a penalty for noncompliance imposed by OSE on
> the grounds that, as in *Camara*, the underlying demand for user records had violated
> the Fourth Amendment.

*Id*. at 493.

Finally, the Court noted:

> [E]ven if this Court's pre-effective-date assessment of the reasonableness of the
> Ordinance qualified as constitutionally adequate pre-compliance review, that
> assessment, albeit on the limited record developed to date, would not assist the
> City's cause.  On the contrary, the Court's present assessment is that it is likely that
> the Ordinance's categorical demand that all booking services make sweeping
> monthly data productions would be held unreasonable under the Fourth
> Amendment.
>
> The Court largely bases this preliminary judgment on the considerations addressed
> above: most notably, the scale of the user data compelled to be produced, as
> measured against the precedents that require that the demands of subpoenas and
> regulatory searches and seizures be reasonably tailored and that reject
> governmental attempts to dispense with tailoring in the generalized interest of
> investigative efficacy.  If each monthly demand is viewed as the functional
> equivalent of an OSE subpoena to each booking service, as the Court regards as
> appropriate, the expansive user records required be produced cannot be credibly
> described as "limited in scope."  The Ordinance's intrusion on protected Fourth
> Amendment interests is all the greater because (1) the user data in question is

commercially sensitive and subject to potential disclosure; and (2) the Ordinance's requirement for monthly productions of such data is perpetual.

An historical perspective underscores this overreach.  An attempt by a municipality in an era before electronic data storage to compel an entire industry monthly to copy and produce its records as to all local customers would have been unthinkable under the Fourth Amendment.  It would have been out of bounds on the grounds of excessive burden alone.  The more ready ability of a modern company whose business is accomplished through cyber communications to comply with such a demand lessens the burden objection.  But this should not obscure the extent to which the Ordinance departs from Fourth Amendment standards.  A ruling upholding the Ordinance as reasonable would invite municipalities to make similar demands on e-commerce companies, whether by legislation or subpoena, for the routinized production to investigative agencies of broad-ranging records as to all users or customers.  It would invite such productions so as to permit regulators to troll these records for potential violations of law, even as to customers as to which there had been no basis theretofore to suspect any violation of law.

Existing Fourth Amendment law does not afford a charter for such a wholesale regulatory appropriation of a company's user database . . . .

On the record at hand, the Court therefore finds it likely that Airbnb and HomeAway will succeed in invalidating the Ordinance as unreasonable under the Fourth Amendment.  That is because (1) the Ordinance lacks a mechanism for pre-compliance review by a neutral of its monthly command that booking services produce their New York City user records; and (2) even if this facial injunctive action were treated as pre-compliance review, the City has not justified its sweeping capture of constitutionally protected records.

*Id.* at 494–95 (citations omitted).[2]

As to the remaining preliminary injunction factors, the Court found plaintiffs likely to suffer an irreparable injury without a preliminary injunction, and that the balance of harms and public interest favored them.  *Id.* at 498–501.  The Court accordingly entered the preliminary injunction, enjoining Local Law 146 from taking effect until the conclusion of litigation.

---

[2] The Court did not find plaintiffs' other claims of illegality—based on the First Amendment and the SCA—likely to prevail.  273 F. Supp. 3d at 495–98.

The case then proceeded to discovery.  Despite the parties' forecast and the Court's admonition that fact discovery be expeditious, *see id*. at 501, it proved extensive, protracted and contentious, with the Court called upon multiple times to resolve discovery disputes.

On October 10, 2019, the Court held a conference at which the parties previewed their motions for summary judgment, and set a schedule for briefing such motions.  *See* 18 Civ. 7712, Dkt. 128 ("Oct. 10, 2019 Tr.").  On December 20, 2019, the parties submitted a 221-page joint statement of undisputed facts.  Dkt. 113.  On February 13, 2020, with the briefing process underway and the City's opening brief due the next day, Airbnb and the City jointly moved for a stay of the litigation, to provide an opportunity to explore a settlement that could moot the case.  Dkt. 118.  The Court, on consent, entered such a stay.  Dkt. 119.

On July 7, 2020, with the stay still in place, the City amended the relevant provisions of the N.Y.C. Administrative Code.  *See* Dkt. 129-1 ("Local Law No. 64").  In pertinent part, the City narrowed the data that booking services were obliged to supply.  The amended provisions required booking services to furnish data only as to user listings apt to violate the multiple-dwellings laws  (*e.g.*, listings that offered or appeared to offer a rental of an entire dwelling unit or a rental for three or more persons at the same time).  *See id.* § 1.  The amended provisions also eliminated reporting obligations for listings for fewer than five days, eliminated the obligation to report the total fees received by the booking service, and reduced the frequency of reporting from monthly to quarterly.  *Id.* § 2.

On the basis of these amendments, Airbnb, on June 12, 2020, agreed to a 125-day stay of the litigation, and, on July 14, 2020, settled its case against the City and stipulated to dismissing its action.  *See* 18 Civ. 7712, Dkts. 157, 161.

As to HomeAway, on June 12, 2020, it also consented to a 125-day stay, to enable it to evaluate the amendments.  Dkt. 128.  On October 6, 2020, the City, with HomeAway's consent, asked the Court to dismiss HomeAway's action as moot in light of the changes to the relevant statutory provisions.  Dkt. 129.  On October 7, 2020, the Court entered an order dismissing the case as moot.  Dkt. 130.

### B.    HomeAway's Application for Fees and Costs

On October 9, 2020, HomeAway moved for an award of attorneys' fees ($1,471,883.20) and costs ($30,467.50) pursuant to 42. U.S.C. § 1988.  Dkt. 131.  In support, it submitted a memorandum of law, HomeAway Mem., and a declaration by Kristen A. Linsley, Esq., with attachments, including billing records, Dkt. 133 ("Linsley Decl."); Dkt. 135-1 ("Billing Records"). On December 15, 2020, the City opposed that motion, NYC Opp'n, and filed supporting declarations by Carlos Fernando Ugalde Alvarez, Esq., Dkt. 140 ("Alvarez Decl."), and Karen B. Selvin, Esq., Dkt. 141 ("Selvan Decl.").  On January 25, 2021, HomeAway replied, HomeAway Reply, and filed a second declaration from Ms. Linsley, Dkt. 149 ("Linsley 2d Decl.").

## II.    Discussion

In *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240 (1975), the Supreme Court reaffirmed the "American Rule" that each party in a lawsuit ordinarily shall bear its own attorneys' fees absent express statutory authorization to the contrary.  In response, Congress enacted the Civil Rights Attorney's Fees Award Act of 1976 (the "Act"), 42 U.S.C. § 1988.  It authorized district courts to award reasonable attorneys' fees to prevailing parties in civil rights litigation.  *Hensley v. Eckelhart*, 461 U.S. 424, 429 (1983).

The Act's objective is to "ensure effective access to the judicial process with persons with civil rights grievances."  *Id*. (citation omitted).  "Accordingly, a prevailing plaintiff 'should ordinarily recover an attorney's fee unless special circumstances would render such an award

unjust.'" *Id.* (quoting S. Rep. No. 94-1011, at 4 (1976)).  Although a district court has wide discretion in choosing whether to deny fees, that "discretion is narrowed by a presumption that successful civil rights litigants should ordinarily recover attorneys' fees" absent such special circumstances.  *Raishevich v. Foster*, 247 F.3d 337, 344 (2d Cir. 2001).

Here, the City disputes HomeAway's motion seeking a fee award on multiple grounds. The Court accordingly considers these issues, in sequence:  Is HomeAway a prevailing party? Do special circumstances make a fee award to HomeAway, even if a prevailing party, unjust? And what award is reasonable here?

### A.    Prevailing Party

"To qualify as a prevailing party, a plaintiff 'must obtain at least some relief on the merits of his claim.'"  *Chabad Lubavitch of Litchfield Cnty., Inc. v. Litchfield Historic Dist. Comm'n*, 934 F.3d 238, 243 (2d Cir. 2019) (quoting *Farrar v. Hobby*, 506 U.S. 103, 111 (1992)).  "When a party receives a stay or preliminary injunction but never obtains a final judgment, attorney's fees are proper if the court's action in granting the preliminary injunction is governed by its assessment of the merits."  *Haley v. Pataki*, 106 F.3d 478, 483 (2d Cir. 1997).

HomeAway satisfies this standard.  It challenged Local Law 146 as an infringement on constitutional and statutory rights, Dkt. 1, and it promptly moved to block the law from taking effect, Dkt. 10.  It argued that Local Law 146 was void under, respectively, the SCA, the Fourth Amendment, and the First Amendment.  The Court's *PI Decision* found for HomeAway on the second of its arguments.  Analyzing at length the problems the Ordinance posed, the Court found it "likely that Airbnb and HomeAway will succeed in invalidating the Ordinance as unreasonable under the Fourth Amendment."  *PI Decision*, 373 F. Supp. 3d at 495.[3]  The decision to

---

[3] Unlike HomeAway, Airbnb led with the Fourth Amendment argument, *see* 18 Civ. 7712, Dkt. 14-1 at 14, but the two plaintiffs' merits arguments were in substance the same.

preliminarily enjoin Local Law 146, although also finding for plaintiffs as to the other

preliminary injunction factors, was predominantly "governed by its assessment of the merits,"

*Haley*, 106 F.3d at 483.  This qualifies HomeAway as a prevailing party.

That the preliminary injunction won by HomeAway never ripened into a permanent

injunction does not change this result.  The preliminary injunction was in place for more than 18

months.  During that period, it guarded against the infringement of the Fourth Amendment rights

of home-sharing platforms doing business in the city.  The injunction ceased to be effective only

when the City, in July 2020, adopted a narrowed ordinance, making Local Law 146 obsolete and

rendering this case moot.  *See id.* at 483–84 (A "determination of mootness neither precludes nor

is precluded by an award of attorneys' fees." (quoting *LaRouche v. Kezer*, 20 F.3d 68, 75

(2d Cir. 1994))).

As courts have often held, a party prevails under § 1988 where it obtains a preliminary

injunction against enforcement of a law that is later amended or repealed.  *See, e.g.*, *Common

Cause/Ga. v. Billups*, 554 F.3d 1340, 1356 (11th Cir. 2009) (plaintiff prevailed in obtaining

preliminary injunction against state voter identification law, where injunction "prevented

Georgia from enforcing the requirement of photo identification" and state thereafter repealed the

enjoined law); *Dearmore v. City of Garland*, 519 F.3d 517, 524 (5th Cir. 2008) (plaintiff who

had won a preliminary injunction challenging a municipal housing code was a prevailing party,

where "[i]n response to the district court's grant of this preliminary injunction, the City amended

the offending provision of the Ordinance"); *Veasey v. Wilkins*, 158 F. Supp. 3d 466, 468–70, 472

(E.D.N.C. 2016) (plaintiff prevailed where she won a preliminary injunction against a state

firearms statute "preventing defendants from infringing on [the plaintiff's] constitutional rights

by enforcing an unconstitutional law," which state then amended, mooting the case); *Planned

*Parenthood Minn., N.D. v. Daugaurd*, 946 F. Supp. 2d 913, 919–21 (D.S.D. 2013) (plaintiff prevailed when it obtained preliminary injunction against South Dakota statutes governing abortion access and legislature then amended enjoined portions of the statute); *see also Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712, 717–18 (9th Cir. 2013) (collecting cases); *Rogers Grp. Inc. v. City of Fayetteville*, 683 F. 3d 903, 910–911 (8th Cir. 2012); *People Against Police Violence v. City of Pittsburgh*, 529 F.3d 226, 230, 233–234 (3d Cir. 2008); *cf. Haley*, 106 F.3d at 481, 483 (plaintiffs prevailed where they obtained preliminary injunction requiring payment of salaries, and case was later mooted by Governor's compliance with the injunction and adoption of revised budget). So too here.

HomeAway's claim to have won durable relief here is especially convincing. That is because the amended statute eliminates the very features that caused Local Law 146 to be found likely unconstitutional. Whereas the Ordinance required companies to relinquish sweeping data as to all New York City listings—a scale of seizure the Court termed "breathtaking" and "unthinkable" to the Founders—the new law compels production of only targeted data. It seeks information only about listings whose parameters (*e.g.*, by duration and number of renters) reveal an apparent violation of the multiple-dwelling laws. It also eliminates categories of data (*e.g.*, aggregate fees) that Local Law 146 had demanded, and reduces the frequency of reporting. The City itself, in fact, has emphasized that the amended law aims to correct the constitutional flaws in the old. OSE, in endorsing the amendments, stated that it expected the amended law to result in the dismissal of the Airbnb lawsuit, and also specifically referred to HomeAway's action. *See* Linsley Decl., Ex. D at 2. And the City, in moving for dismissal, argued that the new law so diverges from the old as to moot plaintiffs' challenge. *See* Dkt. 129 at 1–2.

HomeAway has thus, unavoidably, prevailed.  Along with Airbnb, it neutralized and then caused to be superseded a law it persuasively argued was unconstitutional.  And the preliminary injunction it and Airbnb secured was never "reversed, dissolved, or otherwise undone." *Sole v. Wyner*, 551 U.S. 74, 83 (2007); *cf.* NYC Opp'n at 1–2 (citing out-of-Circuit cases rejecting fee applications in cases of "erroneously granted" preliminary injunctions that were later dissolved).  As a direct result of the challenge these companies brought, a legally infirm ordinance no longer recognizably exists.  And this achievement was consequential.  Plaintiffs defeated, on a facial challenge, a novel regulatory scheme which, if sustained, had "far-reaching implications" for the authority of municipalities to conscript, without any showing of illegality, the recurrent mass production of customer data in the digital age. *PI Decision*, 373 F. Supp. 3d at 495.

In disputing that HomeAway is a prevailing party, the City does not contest any of this. The City instead argues that, had it litigated the point through summary judgment, evidence it obtained in discovery would have called HomeAway's Fourth Amendment challenge into doubt. It argues that, whereas HomeAway claimed a subjective expectation of privacy with respect to its user data, discovery revealed that, in various business contexts, HomeAway has published or disclosed certain categories of such data.  NYC Opp'n at 3–8.

That argument is not a basis to deny HomeAway its hard-earned status as a prevailing party.  Even assuming that an argument based on the discovery to which the City points would have sustained the Ordinance—a dubious proposition[4]—the City chose not to make that

---

[4] Tellingly, the City does not now argue that Local Law 146 was facially compatible with the Fourth Amendment.  It instead disputes HomeAway's standing to claim such infringement, noting that discovery has revealed that, in business contexts, the company has disclosed user data, *e.g.*, to service providers and affiliates.  But that argument is an extension of an argument the City unsuccessfully made in opposing preliminary relief.  Claiming that the plaintiffs did not have a protected interest in user data, the City noted that HomeAway and Airbnb had complied

argument.  The City could have moved for summary judgment after discovery on the grounds that HomeAway lacked a protected privacy interest in the data it collected, as it had anticipated doing.  *See* Oct. 10, 2019 Tr. at 3–12.  Instead, the day before its brief was due, the City capitulated.  It sought a stay, adopted a narrowed law, and abandoned its defense of the old one.

The City today, confronted with an application for a large fee award, may rue not pursuing the argument it now identifies.  But it has not cited any case law allowing a vanquished party to deny the victor prevailing-party status based on an argument the loser kept in its back pocket.  Section 1988 does not entitle the City to a litigation do-over upon a fee application.  *See Schwarz v. Sec'y of Health & Hum. Servs.*, 73 F.3d 895, 902 (9th Cir. 1995) (declining to consider whether claims in discrimination action were wrongly dismissed in ruling on fees application); *Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, No. 97 Civ. 1202 (PCD), 2006 WL 752872, at *4 (D. Conn. Mar. 17, 2006) ("The Court will not, on this motion for

---

with subpoenas for such data.  The Court, however, held that, like the hotels in *Patel* who claimed a Fourth Amendment violation with respect to guest data, home-sharing companies have a protected interest in the data hosts give them, even if it is sometimes disclosed.  *See PI Decision*, 373 F. Supp. 3d at 484 ("As in *Patel*, where the hotels were held to have a Fourth Amendment interest in the records of their guests, this Court holds that platforms have privacy interests in their user-related records that 'are more than sufficient to trigger Fourth Amendment protection.'" (quoting *Patel v. City of Los Angeles*, 738 F.3d 1058, 1062 (9th Cir. 2013) (en banc), *aff'd*, 135 S. Ct. 2443)).  Although discovery appears to have shown that HomeAway has disclosed host data for business purposes, not merely in response to legal process, it is a reach to claim that the company thereby has forfeited its right to challenge the City's monthly regulatory capture of its entire New York City user database.  Indeed, the Court has already rejected the argument that a platform's disclosures of some user data barred it from challenging New York's vaster demand.  *See id.* at 485 (the platforms "did not relinquish [their] right to challenge the far more sweeping monthly seizures the Ordinance compels," because, "[m]uch as compliance with one subpoena does not preclude an entity from challenging a later subpoena, so, too, each platform retains the right to challenge under the Fourth Amendment the new Ordinance compelling the monthly surrender of vastly larger amounts of user data.");  *cf. SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 744 (1984) (voluntary disclosure waives Fourth Amendment protection only over "that information" actually "communicate[d] to a third party").

attorney's fees and costs, relitigate the merits of the case."); *cf. Hensley*, 461 U.S. at 437 (fee applications under § 1988 "should not result in a second major litigation").

HomeAway, the Court therefore holds, was a prevailing party in this litigation.

### B.   Special Circumstances Making an Award Unjust

The City appears to make two arguments why a fee award to HomeAway, even if a prevailing party, would be unjust.  Each is quickly put aside.

First, reprising its argument as to why HomeAway is not a prevailing party, the City argues that HomeAway misled the Court that it had a reasonable expectation of privacy in its user data, and that awarding it fees therefore "would serve an injustice."  NYC Opp'n at 3 n.1. That is wrong.  For the reasons above, the Court finds doubtful the City's argument that, by disclosing user data in business contexts, HomeAway forfeited its right to claim that the Ordinance's striking sweep infringed its Fourth Amendment rights.  *See supra* note 4.  In all events, HomeAway's argument that it had "a reasonable expectation of privacy in its business records and information," *see, e.g.*, Dkt. 1 ¶¶ 58, 65, was fair advocacy, and not "a false narrative," NYC Opp'n at 1–2.  Its assertion that it had an unrelinquished privacy interest in its user records does not make an award here unjust.

Second, the City belittles HomeAway as a passive plaintiff undeserving of a fee award. It states:

> "[T]hroughout the litigation, HomeAway rode Airbnb's coattails, a fact that is now borne out by HomeAway's own billing records, which show that attorneys at Gibson Dunn & Crutcher ("Gibson Dunn") received very early on in their drafting process copies of Airbnb's complaint and preliminary injunction motion.  As HomeAway's role was limited to commencing a repetitive action and offering duplicative legal arguments, it should not be able to recover one-and-a-half million [] dollars in fees."

NYC Opp'n at 2.

That characterization of HomeAway's role in this litigation, too, is wrong. It is correct that Airbnb filed suit and moved for preliminary relief shortly before HomeAway; that Airbnb's counsel played a somewhat more active role than HomeAway's at the court conferences before and after the *PI Decision*; and that Airbnb, unlike HomeAway, led its brief seeking preliminary relief with what proved the winning, Fourth Amendment argument. But HomeAway's legal work cannot be minimized as tagalong. The Court, throughout, perceived HomeAway's legal team's contributions as close to Airbnb's in the important mission of successfully challenging Local Law 146 as unconstitutional. Each team's work in this case of first impression was first rate. And once discovery began, HomeAway was uniquely responsible for certain work. In particular, once the City sought extensive discovery from each plaintiff, HomeAway alone was responsible for responding to, or challenging, the City's demands for its records and testimony.

That Airbnb, which has not sought a fee award, litigated alongside HomeAway has obvious bearing on the amount of HomeAway's reasonable award. The Court addresses that factor *infra*. But that HomeAway was joined in challenging Local Law 146 by another well-represented home-sharing company does not make an award to HomeAway unjust.

The Court therefore does not find that special circumstances make a fee award unjust.[5]

---

[5] The Court notes an argument the City has not pursued: that its financial condition makes a fee award unjust. And the case law to date has given public entities' claims of financial austerity little traction under § 1988. *See Cohen v. W. Haven Bd. of Police Comm'rs*, 638 F.2d 496, 506 (2d Cir. 1980) ("Ordinarily the court would not focus exclusively on the financial condition of one party unless that party appeared to be in extremis, which we do not understand to be true of West Haven."); *Vulcan Soc'y of Westchester Cnty., Inc. v. Fire Dep't of City of White Plains*, 533 F. Supp. 1054, 1060 (S.D.N.Y. 1982) (noting "Court of Appeals' warning that financial condition-ability to pay-should only be given substantial weight in cases of real or extreme hardship"); *Sharrock v. Harris*, 489 F. Supp. 913, 915 (S.D.N.Y. 1980) ("Lack of funds on the part of a public agency would not seem to be one of the 'special circumstances' Congress had in mind, since Congress clearly contemplated that governmental bodies, which are usually short of funds, would often be the defendants against which attorneys' fees would be assessed."); *see also*

C.       **Amount of a Reasonable Fee and Cost Award**

1.       **Applicable Legal Standards**

Once a district court determines that a party has prevailed, it must calculate what

constitutes a reasonable attorneys' fee.  *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992).  A

presumptive reasonable fee is calculated by using the "lodestar" method, under which the Court

multiples the number of hours reasonably expended on the litigation by a reasonable hourly rate.

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183,

189–90 (2d Cir. 2008); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748 (2d Cir. 1998).

In determining the amount of the reasonable fee award, the district court is to broadly

consider case-specific variables, mindful of the idiosyncratic quality and path of many civil

rights litigations.  The Second Circuit, in *Arbor Hill*, clarified the relationship between the

lodestar method and a widely used multi-factor test (the "*Johnson* test") that some courts had

treated as an alternative mode of calculation.  *See* 522 F.3d at 188–91 (recapping history of

award-calculation methods).[6]  The Circuit concluded:

---

*United States v. Hylton*, No. 3:11 Civ. 1543 (JCH), 2013 WL 3927858, at *4 (D. Conn.
July 26, 2013) ("Courts have explained that defendants who seek a reduction in fees must be
specific as to their ability to pay" and generally require such defendants to provide evidence of
their "financial assets, liabilities, income, and expenses" before relieving them of any fee
obligations), *aff'd*, 590 F. App'x 13 (2d Cir. 2014).  With the City having forgone such an
argument, there is no occasion to consider whether the City's current financial condition—
reportedly parlous in the wake of the pandemic—could have met the high standard for hardship
set out above.

[6] The *Johnson* factors were developed by the Fifth Circuit, which directed lower courts to
consider 12 factors in setting a reasonable fee.  *See Johnson v. Ga. Highway Express, Inc.*, 488
F.2d 714 (5th Cir.1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87
(1989).  These are: (1) the time and labor required; (2) the novelty and difficulty of the questions;
(3) the level of skill required to perform the legal service properly; (4) the preclusion of
employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly
rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or
the circumstances; (8) the amount involved in the case and the results obtained; (9) the

> We think the better course—and the one most consistent with attorney's fees jurisprudence—is for the district court, in exercising its considerable discretion, to bear in mind *all* of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate. The reasonable hourly rate is the rate a paying client would be willing to pay. In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson* factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively. The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case. The district court should then use that reasonable hourly rate to calculate what can properly be termed the "presumptively reasonable fee."

*Id.* at 190; *see Hensley*, 461 U.S. at 434 n.9 ("The district court also may consider other factors identified in [*Johnson*] though it should note that many of these factors usually *are subsumed* within the initial calculation of hours reasonably expended at a *reasonable* hourly rate."); *see also Lilly v. City of New York*, 934 F.3d 222, 228–30 (2d Cir. 2019). "A district court has considerable discretion in determining what constitutes a reasonable fee award." *Ahmed v. City of New York*, No. 17 Civ. 3044 (SHS), 2020 WL 6487521, at *3 (S.D.N.Y. Nov. 4, 2020) (citation omitted); *see also Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 307 (2d Cir. 2011).

As to costs, an award of costs under § 1988 normally includes those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged to fee-paying clients. *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987). Recoverable disbursements include such items as legal research, photocopying, postage, transportation, and filing fees. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 369 F.3d 91, 97–98 (2d Cir. 2004).

---

experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 717–19.

### 2.    The Amounts Sought Here

HomeAway seeks a fee award of $1,471,883.20, for the work of its outside counsel,

Gibson Dunn & Crutcher LLP ("Gibson Dunn").  The requested fee award reflects 1,660 billable

hours, at hourly billing rates for partners of between $986 and $1,285, for counsel of between

$815 and $851, for associates of between $425 and $885, and for legal assistants and support

staff of between $405 and $615.[7]  HomeAway represents that these are the rates that it has in fact

paid, or will pay, Gibson Dunn.  The City counters that both the claimed hours, and the requested

hourly rates, are unreasonable and excessive.

HomeAway also seeks an award of costs in the amount of $30,467.50, covering legal

research, travel, court reporters, document production, and printing.  The City disputes several

areas of these costs, mainly relating to travel by HomeAway's California-based attorneys.

### 3.    The Reasonable Fee Award Here

In assessing the reasonable fee award, the Court first considers factors bearing on the

reasonableness of the hours worked, and then factors bearing on the reasonableness of the billing

rates.

#### a.    *Hours Worked*

The legal work for which HomeAway seeks recompense entailed pre-suit investigation

and research, including drafting the Complaint; the preliminary injunction application; defensive

---

[7] These hours were worked by the following attorney timekeepers: partner Kristin Linsley (337.4 hours, at hourly rates between $1,035 and $1,139); partner Mylan Denerstein (31.20 hours, at rates between $986 and $1,285); counsel and then partner Joshua Dick (498.6 hours, at rates between $815 and $851); associate Patrick Hayden (433.3 hours, at rates between $745 and $885); associate Jacob Spencer (116.9 hours, at rates between $715 and $792); associate Alex Harris (23.4 hours, at rates between $698 and $788); associate Debbie Jang (75.10 hours, at rates between $605 and $850); associate Anthony Bedel  (46.6 hours, at rates between $425 and $504); and associate Zachary Piaker (97.8 hours, at rates between $425 and $504). HomeAway's legal assistants spent 83.1 hours on the matter, at rates between $405 and $615.

and offensive discovery; preparation of the joint statement of undisputed facts and a draft summary judgment submission; and the fee application.  The Court has carefully reviewed outside counsel's detailed billing records, mindful of the *Arbor Hill* decision, the *Johnson* factors, and the expectations—with which the Court is well familiar—governing constitutional and commercial litigation in this market.

The Court's judgment, in the main, is that the hours HomeAway's counsel devoted to these projects were justifiably and efficiently spent.  Two factors, however, require a meaningful reduction in the hours for which the City is properly held accountable.

***Overlapping work with Airbnb***:  In challenging the proposed award, the City emphasizes that Airbnb litigated alongside HomeAway.  Although the Court rejects the depiction of HomeAway as a junior or passive partner in challenging the Ordinance, the existence of two plaintiff teams, to the extent they worked in parallel on common tasks, bears on the legal work by HomeAway's counsel that the City may reasonably be asked to pay.

Here, the work by counsel for Airbnb and the work by HomeAway's counsel overlapped considerably, particularly though the end of January 2019.  This period spanned the preparation and filing of the complaints, the preparation and filing of the motions for preliminary relief, the October 5, 2018 hearing on those motions, post-hearing submissions, review of the January 3, 2019 *PI Decision*, and the parties' strategizing immediately thereafter and submissions as to next steps.  The work of the plaintiffs' legal teams in these areas was significantly coterminous.  They filed similar complaints on the same day.  They moved for the same preliminary relief days apart.  And their legal briefs made similar arguments citing similar case law.  Had either plaintiff alone so litigated, the *PI Decision*'s outcome and reasoning would have been much the same, as would the end result of this litigation.  Although each plaintiff had every right to ask its

estimable counsel to litigate the case as if working alone, it would have been unreasonable for the City to be asked to shoulder the costs of each to the extent there was duplication.[8]

Airbnb chose not to move for fees under § 1988. Instead, it chose to work with the City collaboratively in developing amendments that superseded the Ordinance. Upon doing so, Airbnb entered into a settlement agreement with the City, *see* 18 Civ. 7712, Dkts. 157 (joint letter reporting settlement), 157-1 (settlement agreement), in which each party agreed to bear its own fees and costs, *id.*, Dkt. 157-1 § 3.12, which resulted in a stipulation of discontinuance, *id.*, Dkt. 160. HomeAway was not a party to this process. *See* 18 Civ. 7712, Dkt. 159 (letter from HomeAway, agreeing to stay but noting that it was not party to the settlement). However, had Airbnb moved alongside HomeAway for a fee award—had it been neither constrained from doing so by the settlement agreement, nor deterred by the dismal corporate optics of demanding a hefty fee award from the City at this precarious point in its history—the Court would not have compensated each plaintiff for their full hours. The Court would have reduced each plaintiff's fee award to excise duplicative work. That Airbnb forwent such an application pursuant to its settlement with the City should not deprive the City of the benefits of its bargain with Airbnb, which the Court views as salubrious. The Court accordingly will reduce the hours for which HomeAway is to be compensated to reflect its best estimate of the extent of duplication.

---

[8] HomeAway's billing records, unsurprisingly, reflect much coordination among Gibson Dunn and Kaplan, Hecker, & Fink, LLP, Airbnb's principal outside counsel. Such coordination among parties with common interests is to be encouraged and surely achieved some efficiencies, as HomeAway represents, including serving joint discovery requests. Nonetheless, the parties here did much parallel legal work, as reflected, *inter alia*, in their separate yet similar complaints, and their separate briefs in support of preliminary relief, which made, albeit in different sequences, essentially the same legal arguments. On the limited record—consisting of billing records of HomeAway and the plaintiffs' public filings—outside counsels' coordination appears mostly to have been aimed at achieving strategic unity and quality than at minimizing either firm's hours.

The Court's judgment, following close review of billing records and the filings on the docket, is that the hours worked by HomeAway's counsel through the end of January 2019 are properly reduced, for fee award purposes, by 25%, on account of such duplication.  That reflects an assessment that, during that initial phase of this litigation, approximately 50% of the legal work—including research, analysis, counseling, strategizing, and drafting—of the two plaintiffs was coterminous.

Following January 2019, as the case moved to discovery, the two plaintiffs' workstreams were more distinct.  That is particularly so to the considerable extent that plaintiffs' discovery work was defensive—responding to document requests, interrogatories, and deposition requests from the City that necessitated a client-specific response.  Nonetheless, HomeAway's billing records reflect common endeavors with Airbnb during this phase, including as to strategy, offensive discovery, and responding, objecting to, and litigating City discovery demands.  The Court's judgment is that for the period February 1, 2019 through the case's dismissal as moot in October 2020, the hours worked by HomeAway's legal team are properly reduced, for fee award purposes, by 10%, on account of such duplication.  That reflects an assessment that during the later phase of this litigation, approximately 20% of the two plaintiffs' legal work was coterminous.

The City argues for a much greater, 50%, reduction—faulting HomeAway for devoting heavy hours to this case.  *See* NYC Opp'n at 9–18.  But the bulk of those hours were expended after January 2019, in discovery and in preparation for summary judgment.  Responsibility for HomeAway's work of this nature lies squarely with the City.  Rather than promptly reassessing the flawed Ordinance—and proposing a stay of discovery while it explored amended legislation—the City aggressively pursued extensive plaintiff-specific discovery, while dropping

21

the appeal it had initially filed from the *PI Decision*.  Dkt. 71.  It did so aware of the prospect of

a fee request under § 1988 were it to lose, and that discovery could not alter the features of the

Ordinance that had led the Court to find it likely unconstitutional: the scope of its monthly data

demands and the lack of a mechanism for pre-compliance review.  The City's ensuing discovery

demands for records, interrogatory responses, and testimony regarding plaintiffs' handling of

user data—in the service of the standing defense on which it had lost once already—made it

inevitable that plaintiffs' counsel would expend long hours in response.

At a conference at the close of discovery, before work began on summary judgment, the

Court, in fact—mindful of a potential fee request—pressed the City why it was "doggedly

doubling down on this ordinance rather than using some other tools in its tool box," such as

exploring other legislative or regulatory approaches "that do not so significantly entangle [the

City] in a Fourth Amendment problem."  Oct. 10, 2019 Tr. at 12, 16; *id*. at 12–13 (Court stated it

"never imagined we would get to this state because I assumed the mayor of the City of New

York and City Council have read the Fourth Amendment and read the decision and were actually

interested in regulating as opposed to continuing to litigate this particular ordinance").  Yet the

City persisted.  Thus ensued four more months of costly litigation—including the negotiation of

a 221-page joint statement of undisputed facts, Dkt. 113—before the City, on February 13, 2020,

the day before its summary judgment brief was due, moved for a stay to enable it "to explore a

settlement that could render remaining claims moot."  *See* Dkt. 118.  The Court will not penalize

HomeAway for meeting the demands required by the City's aggressive litigation decisions.

***Top-heavy staffing***:  HomeAway's compensable hours for this second phase warrant a

separate reduction, on account of its top-heavy legal staffing.  During this lawsuit, partners (and

one counsel who made partner during the litigation) billed 867.20 hours representing

HomeAway (or 52.2% of all lawyer hours) and associates billed 793.1 hours (47.8%).  Top-heavy hours may be unavoidable in certain legal-practice niches (*e.g.*, regulatory and counseling practices) or on certain cases.  And the pre-discovery phase of this litigation, whose initiating papers and motion for preliminary relief focused on constitutional and statutory questions, lent itself to heavy hours by seasoned lawyers such as the partners and counsel representing HomeAway here.  But once cases move into document and deposition discovery, clients in the New York legal market rightly expect such work to be handled, so long as consistent with quality work product, by attorneys with lower billing rates.  The discovery work in this litigation, with which the Court is familiar both from resolving discovery disputes and from its review of HomeAway's billing records, was not qualitatively unusual so as to depart from that paradigm.

To be sure, it was HomeAway's prerogative to commission or approve top-heavy staffing on this matter, which HomeAway no doubt viewed as important.  "On a fee-shifting application, however, the governing test of reasonableness is objective; it is not dictated by a particular client's subjective desires or tolerance for spending.  The test is whether the plaintiff 'spen[t] the minimum necessary to litigate the case effectively.'"  *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 52 (S.D.N.Y. 2015) (citation omitted) (trimming request for purposes of Lanham Act fee award where plaintiffs' counsels' bills reflected high ratio of partner to associate hours and "suggest[ed] that [the plaintiffs] opted to pay for, and received, the Cadillac Escalade, not the Honda Civic").  Ample case authority in this District, applying the standard of objective reasonableness, supports reducing a fee award where the legal hours recorded by plaintiffs' counsel fell unusually heavily on partners with high hourly rates. *See, e.g.*, *Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, No. 17 Civ. 5543 (WHP), 2021 WL 76328, at *5 (S.D.N.Y. Jan. 7, 2021); *Murray v. UBS Sec., LLC*, No. 14 Civ. 927 (KPF), 2020 WL 7384722,

at *15 (S.D.N.Y. Dec. 16, 2020); *New Earthshell Corp. v. Jobookit Holdings Ltd.*, No. 14 Civ.

3602 (JMF), 2015 WL 2152681, at *2 (S.D.N.Y. May 7, 2015); *Trinidad v. Pret a Manger*

*(USA) Ltd*, No. 12 Civ. 6094 (PAE), 2014 WL 4670870, at *9 (S.D.N.Y. Sept. 19, 2014); *Lucky*

*Brand Dungarees, Inc. v. Ally Apparel Res., LLC*, No. 05 Civ. 6757 (LTS) (MHD),

2009 WL 466136, at *4 (S.D.N.Y. Feb. 25, 2009); *Shannon v. Fireman's Fund Ins. Co.*,

156 F. Supp. 2d 279, 301–02 (S.D.N.Y. 2001).  Here, HomeAway's case, once discovery began,

could similarly have been pursued with less-partner-heavy staffing.

Accordingly, the Court will reduce, by an additional 15%, the requested fee award for the

phase of this case beginning February 1, 2019.  The result is that, for both phases of the case, the

Court will reduce the hours on which HomeAway's fee request is based by 25%.

***Other challenges to counsels' hours***:  The Court, however, is generally unpersuaded by

the City's other broad challenges to the reasonableness of HomeAway's hours.[9]

First, the City argues that HomeAway is not entitled to fees for the hours that its lawyers

worked on its summary judgment motion because HomeAway never filed that motion.  *See* NYC

Opp'n at 11–12.  But the work on that motion was justifiably performed, and predictably well

---

[9] With two discrete exceptions:  First, the City argues that HomeAway's compensable hours should be reduced by 24.2 hours, for time (1) developing comments on OSE's proposed rules implementing the Ordinance (23.5 hours), and (2) litigating a state-court subpoena dispute (0.7 hours).  *See* NYC Opp'n at 11.  HomeAway concedes this point.  HomeAway Reply at 7 n.3.  Second, the City argues that HomeAway should not be entitled to fees for the unsuccessful (and later abandoned) First Amendment argument it made in support of the preliminary injunction.  *See* NYC Opp'n at 12.  HomeAway does not respond to this argument, which the Court finds persuasive.  *See McCann v. Coughlin*, 698 F.2d 112, 130 (2d Cir. 1983) ("Where the claims are separable, and one or more are found to be without merit, then the district court should decline to award that portion of the requested fees which relate to the unsuccessful claim.").  HomeAway's bills do not permit the Court precisely to quantify the hours spent on this distinct argument.  The Court's judgment is that a reduction of 32 hours (8.0 hours each from attorneys Linsley, Dick, Jang and Spencer) fairly estimates the time researching developing, analyzing, discussing, and drafting this argument.

underway, as of the date the City moved for a stay. *See* Linsley Decl. ¶ 10.  A prevailing party is entitled to reasonable fees spent preparing a non-frivolous motion that was not ultimately filed where its adversary should have been—and here surely was—aware that the party was working on the motion. *See, e.g.*, *Mawere v. Citco Fund Servs., (USA) Inc.*, No. 09 Civ. 1342 (BSJ) (DF), 2011 WL 744898, at *6–7 (S.D.N.Y. Feb. 7, 2011), *report and recommendation adopted*, 2011 WL 744894 (S.D.N.Y. Mar. 1, 2011).  Here, the Court had specifically directed HomeAway to begin work on its summary judgment brief before receiving the City's motion, Oct. 10, 2019 Tr. at 48–49.  It was reasonable to expect HomeAway to do so, including because the content of its forthcoming summary judgment motion naturally would have influenced the material HomeAway sought to include in the parties' joint stipulated facts.  HomeAway's compliance with that expectation up until the City sought a stay, on the eve of the due date of the City's motion, was reasonable.  The Court thus will not exclude hours associated with HomeAway's ultimately unfiled motion for summary judgment.

Second, the City argues that HomeAway should not be allowed to collect fees relating to the preparation of its fee application.  The default rule, however, is that "[p]revailing parties under Section 1988 are therefore entitled to recover a reasonable fee for preparing and defending a fee application." *Hines v. City of Albany*, 862 F.3d 215, 223 (2d Cir. 2017).  The City argues that the Court should exercise its discretion to deny fees on grounds of bad faith because HomeAway spurned the City's offer to review HomeAway's billing records in advance of its fee application, in the hope of reaching a compromise.  NYC Opp'n 12–13.  Critically, however, the City does not state that today, having reviewed those records, it would accept or would have accepted a compromise fee position.  Instead, the City categorically resists the fee application as undeserved and unjust.  HomeAway's refusal to disclose billing records in advance of its fee

application was regrettable; the Court expects counsel more conscientiously and collegially to attempt to pretermit resolvable disputes.  But the record does not supply a concrete reason to believe that an earlier such disclosure would have mooted the instant fee litigation.  The Court thus will permit HomeAway to collect fees for its work on the fee application, whose quantity the Court finds reasonable.

Finally, the City, seizing on a handful of time entries, faults HomeAway for ostensibly vague entries, block billing, excessive staffing, and wasteful practices.  *See* NYC Opp'n at 15–17.  The Court has slashed fee requests in other cases on account of such billing practices, including block-billing, which the Court has identified as particularly problematic where time entries of five or more hours and covering multiple projects fail to isolate the hours devoted to each.  *See, e.g.*, *Benihana Inc. v. Benihana of Tokyo, LLC*, No. 15 Civ. 7428 (PAE), 2017 WL 6551198, at *5 (S.D.N.Y. Dec. 22, 2017) (reducing hours based on billing records that were "often far too terse and inexact, and were almost always rounded to the nearest hour, reflecting an approach to billing that the Court found disquietingly casual"); *id.* at *6 (reducing hours where many timekeepers billed for quotidian tasks, while noting usefulness and propriety of having multiple reviewers for "letters to an adversary or submissions to a court"); *Beastie Boys*, 112 F. Supp. 3d at 55 (criticizing, as unable to support a determination of whether time was reasonably spent, vague billing entries such as "worked on Monster"); *Trinidad*, 2014 WL 4670870, at *10 (reducing fees where "[s]ingle entries cover as much as 16 hours of work yet provide only a brief description of the tasks completed during that time").  Here, however, on its close review of HomeAway's billing records, the Court has not found the deficiencies alleged by the City, save in limited instances.  The time entries are, in the main, commendably specific.  The isolated

exceptions do not supply a basis for reducing the fee request.  The Court has taken them into account in its determination as to the overall reduction of billed hours that is warranted.

Accordingly, to calculate HomeAway's reasonable fee, the Court will reduce its hours (1) by the 56.2 hours reflected in note 9, above; and, thereafter (2) across the board, by 25%.

### b.    Billing Rates

The parties are far apart in their assessment of the reasonable hourly rates to be used in tabulating the § 1988 fee award.  HomeAway argues that the rates it was charged by its outside counsel are reasonable for this purpose.  It notes that these rates are in accord with those that leading corporate firms in New York City charge corporate clients, and that clients like HomeAway pay.  *See* HomeAway Mem. at 20 (citing law journal articles reporting high end of current corporate billing rates, though not purporting to reflect "market rates" for New York City commercial litigators).  The City counters that the reasonable rates here are measured by billing rates approved in this District for prevailing parties in civil rights cases.  It thus advocates the following billing rates: for partner Kristin Linsley, $475 (instead of $1,035–$1,139 as requested); for partner Mylan Denerstein, $425 (instead of $986–$1,285 as requested); for counsel/partner Joshua Dick, $400 (instead of $815–$851 as requested); for senior associates Jacob Spencer and Alexander Harris, $300 (instead of $715–$792 and $698–$788 as, respectively, requested); for associates Patrick Hayden and Debbie Jang, $250 (instead of $745–$885 and $605–$850, as, respectively, requested); for associates Zachary Piaker and Anthony Bedel, $125 (instead of $525–625 and $425–504 as, respectively, requested); and for the three legal assistants, $125 (instead of $405–$615, as requested).[10]

---

[10] The parties do not agree, and at times are unclear, as to whether certain associates are junior, mid-level, or senior.  That does not affect the Court's analysis, which attends to these attorneys' relevant experience and role, not the designation the firm or City gives them.

In resolving this dispute, the Court has considered all of the case-specific *Johnson* and other factors reviewed in *Arbor Hill*. For a variety of reasons, the Court's judgment is that the reasonable billing rates for this case are between those advocated by HomeAway and the City, but substantially closer to those urged by the City.

To begin, the fact that the prevailing party has negotiated, or paid its lawyers based on, a particular billing rate is not the test of the rate's reasonableness under § 1988. *See Beastie Boys*, 112 F. Supp. 3d at 52 ("On a fee-shifting application, . . . the governing test of reasonableness is objective; it is not dictated by a particular client's subjective desires or tolerance for spending.") (collecting cases); *Thor 725 8th Ave. LLC v. Goonetilleke*, No. 14 Civ. 4968 (PAE), 2015 WL 8784211, at *10 (S.D.N.Y. Dec. 15, 2015) ("That [plaintiff] opted to pay the high rates requested by [its law firm] does not mean that the [defendants] should be required to reimburse fees that exceed those which, based on the standards reflected in case law in this District, a reasonable objective client would be willing to pay."), *aff'd*, 675 F. App'x 31 (2d Cir. 2017); *Gurung v. Malhotra*, 851 F. Supp. 2d 583, 596–97 (S.D.N.Y. 2012) ("The issue thus is not what well-heeled clients might be willing to pay, but the 'hourly rate at which a client who wished to pay no more than necessary would be willing to compensate his attorney' for the services that Gibson Dunn provided." (quoting *Arbor Hill*, 522 F.3d at 191)); *Pastre v. Weber*, 800 F. Supp. 1120, 1125 (S.D.N.Y. 1991) ("Although we have several times noted the extraordinary competence, ingenuity and devotion plaintiff's attorneys displayed in this litigation, we think there is force in defendant's argument that he should not be required to pay for legal services at the rate Hughes Hubbard would charge to, say, General Motors or IBM (should they be among its clients), but should be required to compensate plaintiff only for what would have been charged by a competent attorney specializing in civil rights litigation."); *see also Restivo v. Hessemann*, 846

F.3d 547, 590 (2d Cir. 2017) ("[T]he touchstone . . . for awarding attorneys' fees in civil rights cases is that district courts should award fees *just high enough* to attract competent counsel." (citation omitted)).  There are many reasons why a client and counsel settle on a rate, including a longer-term course of dealing or a negotiated rate framework spanning all representations during a given period, which do not bear on the reasonable rate in the particular case.

Rather, courts generally look to the hourly rates employed in the District in comparable species of cases as a starting benchmark for the reasonable fee.  *See, e.g.*, *Restivo*, 846 F.3d at 590; *see Heng Chan v. Sung Yue Tung Corp.*, No. 03 Civ. 6048 (GEL), 2007 WL 1373118, at *3 (S.D.N.Y. May 8, 2007) ("[A] discount in fees is appropriate insofar as the market rate for civil rights litigation services is lower than the market rate for services provided to high-profile corporate clients.").  "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate . . . hourly rates." *Finch v. N.Y. State Off. of Child. & Fam. Servs.*, 861 F. Supp. 2d 145, 154–55 (S.D.N.Y. 2012) (quoting *Hensley*, 461 U.S. at 437). To satisfy that burden, the fee applicant must show by "'satisfactory evidence—in addition to the attorney's own affidavits'—that the requested hourly rates are the prevailing market rates." *Farbotko v. Clinton County of New York*, 433 F.3d 204, 209 (2d Cir. 2005) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)).

Here, as the City persuasively argues, the most comparable class of cases are civil rights cases successfully brought against units of government for infringements of Fourth Amendment and other constitutional rights.  To be sure, this litigation differs from paradigmatic such cases in important respects.  It is a facial Fourth Amendment challenge to a regulation.  It is not an as-applied damages action under 42 U.S.C. § 1983.  And the victim of the unreasonable search or seizure is a corporation subjected to an unreasonable demand for business records.  It is not an

individual subjected to an unlawful stop and frisk, vehicle stop, or home search.  But the legal and factual issues on which this case pivoted as reflected in the *PI Decision*—involving the reasonableness and legality of a seizure—make it more closely akin to civil rights cases under the Fourth Amendment than the sophisticated, complex, and often expert-laden controversies for which leading firms charge corporate clients top dollar.  These commonly involve areas of law such as antitrust, securities, banking, trade, patent, and insurance law; mergers and acquisitions; and multi-district and transnational commercial disputes.

That said, there are features of this case that made it more challenging than much civil rights litigation.  The preliminary injunction motion, in particular, called on counsel to brief and argue difficult constitutional questions, including the Fourth Amendment's application to a novel Ordinance and how, if at all, the 2015 *Patel* decision applies to the compelled production, rather than the on-site search, of a business's customer records.  These challenges justified HomeAway's staffing the case with a team with significant appellate and constitutional law experience.  They justify approval of higher billing rates than have been found reasonable in garden-variety civil rights actions.  However, the litigation that followed the *PI Decision* did not, for the most part, call upon these specialized skills.  For HomeAway's counsel, it consisted heavily of more quotidian discovery-related functions—such as producing discovery, reviewing discovery, defending and taking depositions, and litigating discovery disputes—and preparing to brief, as guided by the *PI Decision*, summary judgment motions.[11]

---

[11] In partial contrast, Airbnb's counsel—to the extent they worked closely with the City to design amended legislation that would satisfy the Fourth Amendment and moot this matter—could lay claim, during the latter half of this case, to drawing upon such expertise.

The Court therefore will approve as reasonable billing rates within, but on the higher end of, the range recently approved in this District for civil rights litigation.  In determining the rates it finds reasonable here, the Court has been mindful of factors that favor a higher billing rate. These include the impressive credentials and deep relevant experience of the members of HomeAway's legal team, their unique experience with these cases of this nature, and the customary billing rates of these lawyers.  The Court has also considered contrary factors.  These include that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively," *see Arbor Hill*, 522 F.3d at 190, and that, in a high-profile case in which a firm's victory may easily and profitably be marketed to existing and potential clients, a client "might be able to negotiate with [its] attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case," *id*.

The Court accordingly finds the following rates reasonable:

Kristin Linsley is a partner at Gibson Dunn with significant experience in complex business and appellate litigation.  She has been a partner at Gibson Dunn for nearly five years, and at Munger, Tolles & Olsen LLP for 22 years before that.  Linsley 2d Decl. ¶ 3.  She also clerked for the U.S. Supreme Court.  *Id.*  At Gibson Dunn, she has litigated several Fourth Amendment, First Amendment, and SCA challenges to municipal ordinances on behalf of HomeAway.  *Id.* ¶ 4.  More broadly, she has extensive experience in the field of privacy, cybersecurity, and technology law, including in the context of complying with and challenging state and local regulation.  *Id.* ¶ 5.  As courts in this District have remarked in assessing reasonable rates for experienced civil rights attorneys, such rates "appear to cluster in the $350–450 per hour range."  *See Salama v. City of New York*, No. 13 Civ. 9006 (PKC), 2015 WL 4111873, at *3 (S.D.N.Y. July 8, 2015) (collecting cases and awarding partners at Covington &

Burling LLP with 25 and 30 years of experience fees hourly rates of $450 and $425, respectively); *Gurung*, 851 F. Supp. 2d at 596–97 (collecting cases holding that the range for experienced civil rights and employment litigators is between $250 and $450, and awarding Gibson Dunn partner with 30 years of experience and "substantial experience in civil rights litigation" $450 per hour—reduced from requested $1,080 per hour); *Heng Chan*, 2007 WL 1373118, at *3 (awarding rate of $450 per hour to partner at Skadden Arps Meagher & Flom with 16 years of experience, as equivalent to rates of civil rights practitioners with similar experience). That said, higher rates—of "$550 per hour or more"—have been "reserved for extraordinary attorneys held in unusually high regard by the legal community." *Salama*, 2015 WL 4111873, at *2 (quoting *Finch*, 861 F. Supp. 2d at 154–55). In a particularly complex civil rights actions, albeit one that lasted "the better part of a decade," a court has found $650 reasonable for lead counsel. *See Abdell v. City of New York*, No. 05 Civ. 8453 (RJS), 2015 WL 898974, at *3 (S.D.N.Y. Mar. 2, 2015). Doubtless, too, as the sources HomeAway collects reflect, hourly billing rates since these cases were decided have largely trended upwards. *See* HomeAway Mem. at 20; *Abdell*, 2015 WL 898974, at *3 (noting that § 1983 attorneys' fees have been "increasing over time" and awarding hourly rate of $650, "at the top of the range of rates awarded for § 1983 cases in this District"). Accordingly, in light of the unusually complex and sophisticated work here and Ms. Linsley's substantial experience in the relevant area of law generally, and with HomeAway specifically, the Court finds that an hourly rate of $650 is reasonable.

Mylan Denerstein is also a partner at Gibson Dunn, and serves as co-chair of the firm's public policy practice group. Linsley Decl. ¶ 14. She previously served as the deputy chief of the Criminal Division for the U.S. Attorney's Office for the Southern District of New York, and

as chief counsel and principal legal advisor to New York Governor Andrew Cuomo. *Id.* She has worked on challenges to New York regulations affecting home-sharing platforms and other state regulatory initiatives. For reasons similar to those cited above with respect to Ms. Linsley, but somewhat reduced given Ms. Denerstein's lesser experience in with this particular area of law and type of legal challenge, the Court finds that $600 is a reasonable hourly rate.

Joshua Dick is currently a partner at Gibson Dunn, although he was counsel to the firm during most of the period relevant here. Linsley 2d Decl. ¶ 6. He has litigated many of the same actions on behalf of HomeAway that Ms. Linsley has led, as well as other constitutional challenges to municipal ordinances. *Id.*; *see* Linsley Decl. ¶ 15 (describing his practice as "focus[ing] on constitutional challenges to state and municipal regulations"). Owing to his seniority and substantial experience in this area of law, the uncommonly complex nature of the constitutional issues presented in this civil rights action, and the rising tide of billing rates in this District—and in civil rights cases specifically, *Abdell*, 2015 WL 898974, at *3— the Court finds $500 to be a reasonable hourly rate for Mr. Dick. *See Salama*, 2015 WL 4111873, at *3 (awarding rate of $425 per hour to partner with many more years of legal experience, but without experience in the subject-matter area); *Heng Chan*, 2007 WL 1373118, at *3–4.

Jacob Spencer is a senior associate at Gibson Dunn in its appellate and constitutional law, administrative law, and regulatory practice groups. Linsley Decl. ¶ 16. He graduated from law school in 2012 and, before joining Gibson Dunn, clerked on the U.S. Supreme Court and two U.S. courts of appeals. *Id.*

Alex Harris is a senior associate at Gibson Dunn, and a member of the firm's appellate and constitutional law practice group. Linsley 2d Decl. ¶ 8. He graduated from law school in

2011, served as a judicial clerk, and, since joining Gibson Dunn, has worked on several matters on behalf of HomeAway. *Id.*

Patrick Hayden is now a senior associate at Gibson Dunn, but served as a mid-level associate during most of this litigation. *See* HomeAway Reply at 10. His practice focuses on constitutional, appellate, and commercial litigation, and, after graduating from law school in 2014, he served as a law clerk for two federal judges. Linsley Decl. ¶ 17.

For Mr. Spencer and Mr. Harris, the Court finds that $400 per hour is a reasonable hourly billing rate. For Mr. Hayden, $375 is appropriate. That accords with recent case law in this District involving senior associates at sophisticated law firms, and is reasonable in light of the complex issues of first impression presented by this case. *See Salama*, 2015 WL 4111873, at *3 (finding $350 per hour reasonable for "a senior associate with nine years' legal experience at the time of her work on this case, but who has not presented any evidence of experience in civil rights cases similar to this one"); *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 546 (S.D.N.Y. 2008) (awarding $350 per hour for senior associates).

Anthony Bedel is a junior associate at Gibson Dunn, and has also worked on several HomeAway matters since graduating from law school in 2018. *Id.* ¶ 10. Here, he primarily performed legal research in connection with HomeAway's preliminary injunction motion. *Id.*

Zachary Piaker graduated from law school and 2019 and was also a junior associate at Gibson Dunn during the relevant period. *Id.* ¶ 11. He worked primarily on legal research for HomeAway's contemplated motion for summary judgment. *Id.* ¶ 11.

Debbie Jang was a first-year associate at Gibson Dunn when she performed most of her relevant work. HomeAway Reply at 8; Linsley 2d Decl. ¶ 9. She contributed primarily to HomeAway's complaint and preliminary injunction motion. Linsley 2d Decl. ¶ 9.

For each of Mr. Bedel, Mr. Piaker, and Ms. Jang, the Court finds that $300 per hour is a reasonable hourly rate. *See Torres v. City of New York*, No. 18 Civ. 3644 (LGS) (KHP), 2020 WL 6561599, at *5 (S.D.N.Y. June 3, 2020) ("Typical rates . . . for Junior Associates . . . [are] more in the range of $200 to $350 per hour depending on experience.") (collecting cases), *report and recommendation adopted*, 2020 WL 4883807 (S.D.N.Y. Aug. 20, 2020); *Gurung*, 851 F. Supp. 2d at 597 ("As junior associates at a large, well-respected law firm, I find that a reasonable fee for Ms. Chong and Ms. Grysman is $275 per hour."); *Rozell*, 576 F. Supp. 2d at 546 (awarding $250 per hour for junior associates). Although none of these junior associates had applicable experience litigating similar matters, the nature of the work remained more complex than the mine run of civil rights cases, and so a slightly above-market rate is warranted.

Finally, HomeAway has made requests to recoup fees it paid at the hourly rates of between $405 and $615 for the work of two legal assistants—Angel Arias and Laura Michelle Coppola—and one production support staff, Senad Djencic. The Court has no doubt, including based on the high caliber of the work of HomeAway's legal team in this case, that the work of these professionals is excellent. For their services, HomeAway is a free agent, at liberty to pay Gibson Dunn the rates it negotiates. It is, however, unreasonable to the point of audacity to ask New York City to bear these rates under § 1988. They outstrip the rates commonly approved under § 1988 for partners in many civil rights cases. They outstrip the rates that HomeAway paid for the work of some of the associates in this case. HomeAway has not submitted any evidence whatsoever as to why these rates are consistent with the New York City—or any—legal market. Generally, "[r]ates for non-lawyers . . . [fall] below $200 per hour." *Torres*, 2020 WL 6561599, at *5 (collecting cases); *Carrington v. Graden*, No. 18 Civ. 4609 (KPF), 2020 WL 5758916, at *14 (S.D.N.Y. Sept. 28, 2020) ("Even for senior paralegals . . . , courts

have typically capped the rate at $200 per hour."); *id.* (awarding $55 per hour for legal assistants and citing case finding $90 per hour reasonable). Here, the Court finds that $150 per hour for each is reasonable.

### 4. Reasonable Costs

Last, the Court approves as reasonable $27,497.81 in costs for which HomeAway seeks reimbursement, excluding only $2,969.69 in costs associated with Ms. Linsley's travel to New York, which appear to have been erroneously attributed to this mater.

The City first asks the Court to disallow $2,969.69 in costs associated with Ms. Linsley's travel to and from New York City for what appears to have been a hearing held on July 25, 2019, in an unrelated case. *See* NYC Opp'n at 24; Selvin Decl., Ex. G at 1 (identifying "[t]ranscript fee for proceedings held on July 25, 2019," roundtrip airfare for July 24 to 26, 2019, and meals and lodging for the same period); *see* Billing Records at 131, 133, 135. The Court agrees with the City. The Court did not hold a hearing in this case on July 25, 2019, and is unaware of any proceedings that would have occasioned Ms. Linsley's travel to New York City on that date. Although it is possible that HomeAway's Billing Records inadvertently termed some other event in this case, such as a deposition, a "hearing," its timekeepers generally were precise in their description of activities. *See, e.g.*, Billing Records at 135 (designating "[t]ravel to NY for deposition of W. Furlong"). The City reasonably infers that these cost items are unrelated to HomeAway's prosecution of this action. And HomeAway has not responded to this specific point. Accordingly, the Court will exclude the $2,969.69 in costs that appear associated with an unrelated proceeding in New York City in July 2019.

The City's second proposed exclusion of costs fares worse. It asks the Court to disallow $14,759.60 of costs, primarily travel-related expenses, on the ground that two of HomeAway's attorneys (Ms. Linsley and Mr. Dick) are based in San Francisco. The City argues that

HomeAway could have staffed the case wholly with lawyers from Gibson Dunn's New York

office.  NYC Opp'n at 24–25.  That is unpersuasive.  The City chose to impose an Ordinance

that affected HomeAway.  Ms. Linsley has extensive experience representing HomeAway in

disputes around the country relating to the legality of short-rental laws and regulations, each of

which she has worked on with Mr. Dick.  *See* Linsley 2d Decl. ¶¶ 4–5.  It was entirely reasonable

for HomeAway to staff this matter with these lawyers, given their deep experience with both the

company and this area of municipal regulation.  Using experienced counsel familiar with the

company and such regulatory issues, in fact, assuredly promoted efficiency.  And under Second

Circuit law, out-of-pocket expenses for travel—like the other costs for which HomeAway seeks

recompense—are properly reimbursable.  *See Kuzma v. IRS*, 821 F.2d 930, 933–94

(2d Cir. 1987) ("Identifiable, out-of-pocket disbursements for items such as . . . travel . . . are

generally taxable under § 1988 . . . .").

### 5. Summary

In sum, the Court concludes that the total reasonable award of attorneys' fees in this

action is $567,511.88, and the total allowable costs are $27,497.81, for a total award of fees and

costs of $595,009.69.

As to fees, the Court calculates that amount as follows.  First, the Court determined

the reasonable hours spent by HomeAway's counsel by subtracting the following from the total

hours submitted by HomeAway: (1) 9.6 hours spent by Ms. Linsley, 0.5 hours spent by Ms.

Denerstein, 5.9 hours spent by Mr. Dick, and 8.2 hours spent by Mr. Spencer, on unrelated

matters or lobbying work; (2) 8 hours spent by each of Ms. Linsley, Mr. Dick, Mr. Spencer, and

Ms. Jang in relation to the abandoned First Amendment argument; and (3) after making those

deductions, a 25% reduction across the board to adjust for duplicative work with counsel for

Airbnb and for top-heavy staffing.

Second, the Court applied the following rates to the attorneys staffed on this case: $650 per hour for Ms. Linsley; $600 per hour for Ms. Denerstein; $500 per hour for counsel (and later partner) Mr. Dick; $400 per hour for senior associates Mr. Harris and Mr. Spencer; $375 per hour for senior associate Mr. Hayden; $300 per hour for junior associates Mr. Piaker, Mr. Bedel, and Ms. Jang; and $150 per hour for all legal assistants and support staff.  These amounts, alongside the adjusted hours, are reflected in the table below:

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| Kristin A. Linsley | 239.85 | $ 650.00 | $ 155,902.50 |
| Mylan L. Denerstein | 23.025 | $ 600.00 | $ 13,815.00 |
| Joshua D. Dick | 363.525 | $ 500.00 | $ 181,762.50 |
| Alexander N. Harris | 17.55 | $ 400.00 | $ 7,020.00 |
| Jacob T. Spencer | 75.525 | $ 400.00 | $ 30,210.00 |
| Patrick J. Hayden | 324.975 | $ 375.00 | $ 121,865.63 |
| Debbie Jang | 50.325 | $ 300.00 | $ 15,097.50 |
| Zachary J. Piaker | 73.35 | $ 300.00 | $ 22,005.00 |
| Anthony D. Bedel | 34.95 | $ 300.00 | $ 10,485.00 |
| Angel S. Arias | 8.325 | $ 150.00 | $ 1,248.75 |
| Laura Michelle Coppola | 18.075 | $ 150.00 | $ 2,711.25 |
| Senad Djencic | 35.925 | $ 150.00 | $ 5,388.75 |
| **Total:** | **1265.4** | | **$ 567,511.88** |

For costs, the Court awards all of HomeAway's requested costs except for $2,969.69 that do not appear, and HomeAway has not shown, to be related to this litigation.  That amount totals $27,497.81.

**CONCLUSION**

For the reasons above, the Court finds that HomeAway is a prevailing party in this litigation and is entitled to an award of reasonable fees and costs under 42 U.S.C. § 1988.  The Court awards HomeAway $595,009.69, comprising an award of $567,511.88 in fees and $27,497.81 in costs.

The Clerk of Court is respectfully requested to terminate the motion at docket 131 and to close this case.

SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: March 1, 2021
      New York, New York